KING, EXR., APPELLANT, *v.* NATIONWIDE INSURANCE COMPANY, APPELLEE.

[Cite as King *v.* Nationwide Ins. Co. (1988), 35 Ohio St. 3d 208.]

(No. 87-595—Decided March 2, 1988.)

*Scanlon & Gearinger Co., L.P.A.,* *Timothy F. Scanlon* and *Robert A. Royer,* for appellant.
*Robert J. Drexler,* for appellee.

MOYER, C.J. This appeal raises the question whether underinsured motorist coverage provided in an employer's insurance policy extends to a deceased employee whose fatal injuries were sustained in the course of employment as the result of an automobile accident with an underinsured motorist, where the employee was not listed as a designated driver nor was he in an auto named under the policy issued to his employer.

For the reasons that follow, we hold that the employee, Gordon, was covered by his employer's insurance policy.

I

A

The insurance policy before the court is a standard form policy, applicable to individuals and families and, apparently, routinely issued to corporate and other legal entities as well.

The policy defines certain general terms, in pertinent part, as follows:

"DEFINITIONS

"The language of this insurance policy includes certain common words for easy understanding. They have exactly defined meanings, however. In this policy:

"1. the words 'YOU' and 'YOUR' mean or refer to the policyholder first named in the attached Declarations, and include that policyholder's spouse if living in the same household.

"2. the words 'WE,' 'US,' 'OUR,' and 'THE COMPANY' mean or refer to the Nationwide Mutual Insurance Company.

"3. the words 'THE INSURED,' 'AN INSURED,' and 'ANY INSURED' mean or refer to the persons and organizations specifically indicated as entitled to protection under the coverage being described.

"4. the words 'YOUR AUTO' mean the vehicle or vehicles described in the attached Declarations.

"* * *

"7. the word 'OCCUPYING' means in, upon, entering, or alighting from a motor vehicle."

The insuring provisions of the Nationwide contract provide coverage against physical damage to "your auto"; "auto liability (for damage or injury to others caused by your auto)"; "medical payments (medical expenses payable regardless of fault)"; "family compensation (medical, confinement, and death benefits, payable regardless of fault)"; "uninsured motorists (for bodily injury caused by uninsured motorists)"; and "comprehensive family liability (for damage or injury to others from nonvehicular causes)."

By endorsement, ASCAA's uninsured motorist coverage was extended

to cover bodily injury caused by under-insured motorists. The uninsured motorist provision provides, in pertinent part:

"COVERAGE

"Under this coverage, we will pay bodily injury damages that you or your legal representative are legally entitled to recover from the owner or driver of an * * * [underinsured] motor vehicle. Damages must result from an accident arising out of the ownership, maintenance, or use of the * * * [underinsured] vehicle. Bodily injury means bodily injury, sickness, disease, or death.

"Relatives living in your household also have this protection. Anyone else is protected while occupying:

"1. your auto.

"2. a motor vehicle you do not own, while it substitutes temporarily for your auto. Your auto must be out of use because of breakdown, repair, servicing, loss, or destruction.

"3. a four-wheel motor vehicle newly acquired by you. The coverage applies only during the first 30 days you own the vehicle, unless it replaces your auto.

"4. any other motor vehicle while it is being operated by you or a relative living in your household. However, the vehicle must not be owned or furnished to you or a relative living in your household for regular use.

"This coverage also protects others for damages they may be legally entitled to recover because of bodily injury suffered by an insured.

"In any * * * [underinsured] motorists claim, we will jointly determine with the insured or his legal representative whether there is legal right to recover damages, and if so in what amount. If agreement cannot be reached with regard to liability or amount of damages, the matter will be decided by arbitration. * * *

"* * *

"COVERAGE EXCLUSIONS

"This * * * [Underinsured] Motorists insurance does not apply as follows:

"* * *

"4. It does not apply to bodily injury suffered while occupying a motor vehicle owned by you or a relative living in your household, but not insured for * * * [Underinsured] Motorists coverage under this policy. * * *"

In the absence of policy declarations in the record, the parties stipulated, *inter alia,* to the following facts:

"1. * * * the Akron-Summit Community Action Agency ('ASCAA') was the named insured under a contract of insurance issued by the defendant, Nationwide Insurance Company.

"* * *

"10. * * * [Mildred Foster's] vehicle was not furnished to Dale Gordon or the ASCAA for regular use.

"* * *

"12. Dale Gordon was not named as a designated driver under the auto policies issued to * * * [ASCAA].

"13. * * * [Mildred Foster] * * * was not named as a driver in any of the Nationwide policies issued to ASCCA [*sic*].

"* * *

"15. Dale Gordon was not a resident of the households of any of the drivers named as drivers of any of the vehicle [*sic*] insured by Nationwide for ASCAA.

"16. The five vehicles insured by Nationwide for ASCCA [*sic*] were all operational and in use by others when this accident occurred.

"17. Each driver for the ASCCA [*sic*] was listed by name for the vehicle they [*sic*] were going to drive under a category which stated 'List Each Drive [*sic*] in Household.' "

No list of designated drivers or

named vehicles was made a part of the insurance policy or otherwise incorporated by reference into the policy. Nor do the stipulations or any other declaration indicate what significance, if any, was to be given the fact that Dale Gordon was not named as a designated driver under the auto policies and that each driver for ASCAA was "listed by name for the vehicle they [*sic*] were going to drive."

Nationwide argues that we should interpret the stipulations to mean that only those drivers who were listed by name for the specific vehicles they were going to drive for ASCAA were covered by the Nationwide policy and that Dale Gordon was not covered because he was not named as a designated driver. The difficulty we have in adopting Nationwide's argument is that there simply is no language in the policy or in the stipulations that would cause us to conclude that such a legal conclusion flows from the facts before us.

**B**

As in all cases in which insurance coverage is provided by an insurance policy, the issue in this case will be determined by a "* * * reasonable construction [of the contract] in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *Dealers Dairy Products Co.* v. *Royal Ins. Co.* (1960),

170 Ohio St. 336, 10 O.O. 2d 424, 164 N.E. 2d 745, paragraph one of the syllabus; *Bobier* v. *National Cas. Co.* (1944), 143 Ohio St. 215, 28 O.O. 138, 54 N.E. 2d 798, paragraph one of the syllabus. However, it is well-settled that, where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. *Faruque* v. *Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St. 3d 34, 31 OBR 83, 508 N.E. 2d 949, syllabus; *Thompson* v. *Preferred Risk Mut. Ins. Co.* (1987), 32 Ohio St. 3d 340, 342, 513 N.E. 2d 733, 736, and cases cited therein.

Considering the policy language as a whole, the general intent of the insurance contract as revealed by the stipulations appears to have been to insure ASCAA as a legal entity against liability arising from the use of certain named ASCAA vehicles when driven by designated drivers.

Although the parties dispute whether the Nationwide policy insures all ASCAA employees, as King argues, or only specific employees, as Nationwide argues, we consider neither position to be entirely dispositive. Other courts presented with family-oriented language in policies issued to partnerships and corporations have interpreted the scope of underinsured motorist coverage both ways.[1] The parties' stipulation identifies ASCAA

[1] Some courts have agreed with King that because insurers have inserted family-oriented policy language insuring against bodily injury in contracts issued to partnerships, such language must be intended to provide coverage to individuals. *E.g., Hartford Acc. & Indemn. Co.* v. *Huddleston* (Ky. App. 1974), 514 S.W. 2d 676 (family-oriented language in policies issued to partnerships causes the underinsured motorist provisions of the policies to also insure the

partners and their families). Other courts, in cases cited by Nationwide, have found, to the contrary, that employees are not covered under underinsured motorist provisions of policies issued to partnerships, *e.g., Testone* v. *Allstate Ins. Co.* (1973), 165 Conn. 126, 328 A. 2d 686, and not covered under other property damage and bodily injury provisions in policies issued to partnerships, *e.g., Rosen* v. *Natl. Union Fire Ins. Co.* (Fla. App. 1971), 249 So. 2d 701,

as the "named insured." The policy defines "YOU" as the "policyholder first named." Therefore, neither the employees as a whole nor the group of "designated drivers" may be interpreted as the entity to which the word "YOU" refers. We conclude that ASCAA, as a legal entity, is the "YOU" referred to in the policy.

### C

As noted by the trial court, the critical language of the underinsured motorist provisions pertinent to this case states:

"Under this coverage, we will pay bodily injury damages that you or your legal representative are legally entitled to recover from the owner or driver of an * * * [underinsured] motor vehicle. * * *

"Relatives living in your household also have this protection. *Anyone else is protected while occupying:*

"* * *

"4. *any other motor vehicle while it is being operated by you * * *.*" (Emphasis added.)

An important exclusion states that the underinsured motorist insurance:

"4. * * * does not apply to bodily injury suffered while occupying a motor vehicle owned by you or a relative living in your household, but not insured for * * * [Underinsured] Motorists coverage under this policy. * * *"

Examination of this policy language reveals that the question of coverage turns upon the meaning of the undefined phrases "[r]elatives living in your household" and "[a]nyone else."

___

and corporations, *e.g., Harleysville Mut. Ins. Co.* v. *Five Points Fire Co. No. 1, Inc.* (Del. Super. Ct. 1982), 444 A. 2d 304; *Stirratt* v. *Kane* (1966), 273 Minn. 205, 140 N.E. 2d 345. At least one court has found the intent to insure corporations so clear

"Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander* v. *Buckeye Pipe Line Co.* (1978), 53 Ohio St. 2d 241, 7 O.O. 3d 403, 374 N.E. 2d 146, paragraph two of the syllabus. Because "you" and "your" refer to ASCAA as a legal entity, the ordinary meaning of the phrase "[r]elatives living in your household" used in the policy is "manifestly absurd." However, in the context of the policy as a whole, the phrase "[r]elatives living in your household" may be interpreted as referring to all employees of ASCAA, as referring to designated drivers only, or as a nullity. Therefore, the phrase is ambiguous and must be construed in favor of the insured. *Faruque, supra; Thompson, supra.*

If the phrase "[r]elatives living in your household" is construed to refer to all employees of ASCAA, the exclusion cited above precludes coverage because Gordon was occupying a motor vehicle owned by another employee-"relative," which vehicle was not insured under the policy. Such construction in favor of the insurer is contrary to law. Alternatively, if the phrase is construed either to refer to a designated list of "drivers in the household" or to be a nullity, underinsured motorist coverage is extended to Gordon. A construction of "[r]elatives living in your household" as referring to the designated drivers listed as "drivers in the household"

___

and unambiguous that family-oriented language in a policy issued to a corporation was declared a nullity. *Pearcy* v. *Travelers Indemn. Co.* (Fla. App. 1983), 429 So. 2d 1298.

would be in harmony with the intent of the parties to establish a specific and limited category of individuals entitled to bodily injury protection under nearly all the categories of coverage afforded under the policy.[2] However, we need not reach that issue because, under the underinsured motorist coverage, whether the phrase "[r]elatives living in your household" refers to designated drivers or is simply a nullity, we conclude that Gordon was an insured.

The stipulations establish that Foster's automobile was loaned to Gordon for use in the scope of his employment. As such, it was operated by and for ASCAA, the "YOU" referred to in the contract. Therefore, the policy language at issue places Gordon in the position of "anyone else" who is entitled to protection "* * * while occupying * * * any other motor vehicle while it is being operated by you [ASCAA] * * *." The express exclusions from underinsured motorist coverage do not apply.[3]

Nationwide's limiting interpretation of the underinsured motorist provision is founded, in part, upon an unstated assumption that its policy insures the same designated individuals and named vehicles under all coverages. Yet, the precise language used in the insurance contract implies a different result and supports the broad construction of the underinsured motorist coverage prompted by our finding of ambiguity.

The insurance contract's definition of "THE INSURED," "AN INSURED," and "ANY INSURED," as a person "* * * specifically indicated as entitled to protection under the coverage being described," implicitly recognizes that different provisions of the policy may specifically entitle differing groups of persons and automobiles to protection, depending upon the coverage described. This court has previously recognized that the actual language of uninsured or underinsured motorist provisions, because broadly written, may cause the coverage to exceed the scope impliedly intended, as evidenced by the policy declaration. *Ohio Farmers Ins. Co.* v. *Wright* (1969), 17 Ohio St. 2d 73, 46 O.O. 2d 404, 246 N.E. 2d 552, paragraph one of the syllabus[4]; *Kish* v. *Central Natl. Ins.*

---

[2] In addition to insuring "YOU," the physical damage, medical payments, family compensation, and comprehensive family liability coverages described in the policy are extended, in part, to "[r]elatives living in your household." Auto liability coverage is also extended to "[a]nyone living in your household."

[3] The coverage exclusions from underinsured motorist coverage state in their entirety:

"This Uninsured Motorists insurance does not apply as follows:

"1. It does not apply to use of any vehicle by an insured to carry persons or property for a fee. However, shared-expense car pools will not be considered carrying persons for a fee.

"2. It does not apply to use of any vehicle by an insured without permission of the owner.

"3. It does not apply to bodily injury of any insured if he or a legal representative settles, without our written consent, with anyone who may be liable for the injury.

"4. It does not apply to bodily injury suffered while occupying a motor vehicle owned by you or a relative living in your household, but not insured for * * * [Underinsured] Motorists coverage under this policy. It does not apply to bodily injury from being hit by any such vehicle."

[4] The first paragraph of the syllabus of *Ohio Farmers Ins. Co.* v. *Wright* (1969), 17 Ohio St. 2d 73, 46 O.O. 2d 404, 246 N.E. 2d 552, recognizes that:

"An endorsement to an automobile in-

*Group* (1981), 67 Ohio St. 2d 41, at 44 and 49, 21 O.O. 3d 26, at 28 and 31, 424 N.E. 2d 288, at 291 and 293.

For example, the auto liability provisions for damage or injury to others caused by "your auto" cover "* * * damages resulting from the ownership, maintenance, loading or unloading of your auto." "YOUR AUTO" is defined in the policy as "the vehicle or vehicles described in the attached Declarations"—here, the five vehicles stipulated by the parties. In addition to "your auto," the auto liability provisions are extended to also cover "a motor vehicle you do not own, while it substitutes temporarily for your auto * * * out of use because of breakdown, repair, servicing, loss, or destruction"; and newly acquired vehicles for the first thirty days. The underinsured motorist provisions not only encompass these categories but also reach an even broader group, including any other nonowned vehicle not furnished for regular use, such as, in this case, Foster's automobile. Moreover, we note that an express coverage exclusion found under the auto liability coverage which excludes "* * * bodily injury to an employee of any insured, while the employee is engaged in the activities of employment," is clearly absent from the underinsured motorist "COVERAGE EXCLUSIONS." In the construction of insurance contracts, "[w]here exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from

the operation of such contract is included in the operation thereof." *Home Indemnity Co.* v. *Plymouth* (1945), 146 Ohio St. 96, 32 O.O. 30, 64 N.E. 2d 248, paragraph two of the syllabus. See, also, *Moorman* v. *Prudential Ins. Co.* (1983), 4 Ohio St. 3d 20, 22, 4 OBR 17, 19, 445 N.E. 2d 1122, 1124. Accordingly, we conclude that Gordon was an insured under the underinsured motorist provisions of the Nationwide policy.

## II

In addition to seeking a declaratory judgment, King requested that the trial court order Nationwide to arbitrate his claim. The insurance contract provides for arbitration of claims arising under the underinsured motorist coverage "[i]f we [Nationwide] and the insured do not agree about the insured's right to recover damages or the amount of damages * * *." Having found that Gordon was an insured within the scope of the underinsured motorist coverage, his legal representative, King, is entitled to an order that Nationwide arbitrate his claim pursuant to the policy.

Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

*Judgment reversed.*

SWEENEY, LOCHER, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

HOLMES, J., dissents.

---

surance policy by which the insurer agrees to pay to the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile, in the absence of specific language of limitation, is not restricted in coverage to cases where the named insured, at the time of his injury, is using an 'insured automobile' as defined in the endorsement."