Jeanne C. ZIMMERMAN, Plaintiff,

v.

AMERICAN STATES INSURANCE
COMPANY, Defendant.

No. C–2–85–1971.

United States District Court,
S.D. Ohio, E.D.

April 25, 1990.

Ward Denver Coffman, III, Coffman, Lewis, Stubbins & Graham, Zanesville, Ohio, for plaintiff.

Darrell Royce Shepard, Porter, Wright, Morris & Arthur, Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

HOLSCHUH, Chief Judge.

Plaintiff Jeanne C. Zimmerman brings this diversity action against defendant American States Insurance Company seeking payment of a $50,000.00 death benefit from a life insurance policy on plaintiff's deceased husband. Jurisdiction and venue are proper and are not disputed. This case has been submitted by the parties on stipulated facts. This memorandum and order constitutes the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

I.

The following facts have been stipulated by the parties.

On February 19, 1979, American States Insurance Company (hereinafter "American States") issued a life insurance policy (number 304–739) in the amount of $50,-000.00 on the life of Robert Earl Zimmerman. The beneficiary of this policy was the insured's wife and plaintiff in this action, Jeanne C. Zimmerman.

During all times up to the early part of December 1984, the monthly premiums on the policy were paid directly to American States by the insured's bank upon the insured's authorization. At only one point prior to December 1984 had the premium on the policy not been paid in a timely manner. In September 1980 the policy was in default due to the issuance of a non-sufficient fund check from the bank to American States. This error was presumably corrected as the policy remained in force up to December 1984.

Sometime in the first part of that month the authorization for the direct payment of the premium from the bank to American States was withdrawn by the insured. On December 18, 1984, American States received a request from the insured to surrender the policy and receive its cash value. The next day the policy was in default for nonpayment of premium and no further premiums were ever paid on the policy.

American States responded to the insured's request for surrender for cash value of his policy by its letter of January 10,

1985. This letter advised the insured of other options rather than surrender, and informed the insured that if he still desired the cash value he would need to fill out an enclosed cash surrender form and return it with the policy itself.

On January 28, 1985, the insured completed the cash surrender form and mailed it along with the policy to American States. The insured died on January 29, 1985. American States did not receive the forms until January 31, 1985. On or about February 27, 1985, American States received proof of insured's death and the plaintiff's request for the $50,000.00 death benefit. American States tendered the cash value of the policy in a timely manner to the insured's estate, but such tender was refused.

The parties have also stipulated that if plaintiff is not entitled to the $50,000.00 death benefit plus the interest due on it, the policy cash value of $2,196.00 plus interest is due to the Estate of Robert E. Zimmerman, to which Jeanne C. Zimmerman is the administratrix. The parties have waived their right to trial.

## II.

This case turns on the question of whether the policy was in force at the time of the insured's death thereby allowing recovery of the death benefit by plaintiff. There are two dates prior to the insured's death on which the policy arguably terminated: (1) January 19, 1985, when the grace period following a nonpayment of premium expired; and (2) January 28, 1985, when the insured mailed the policy and surrender form. The issue presented is whether the policy terminated on either of those dates. This issue is to be "determined by a ' ... reasonable construction [of the contract] in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed.'" *King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 211, 519 N.E.2d 1380, 1383 (1988) (quoting *Dealers Dairy Products Co. v. Royal Ins. Co.,* 170 Ohio St. 336, 164 N.E.2d 745, paragraph one of the syllabus (1960)).

## A. JANUARY 19, 1985

■ It is established that the policy was in default for nonpayment of premium on December 19, 1984. Defendant argues that the policy terminated following a 31-day grace period, during which time no further premiums were paid on the policy. Plaintiff responds that this argument ignores "the plain and express language of the Defendant's January 10, 1985 letter."

### 1.

The policy contains several provisions dealing with premiums and the effects of nonpayment. Under the heading "Premium Payments," it states:

Premiums are payable to the company in advance beginning on the policy date and in the amount and at the intervals shown on the policy data page of this policy.

The policy data page indicates that the premium was to be paid on a monthly basis beginning February 19, 1979, the date when the contract for insurance was created. It is stipulated that the deceased cancelled his authorization for the bank to automatically pay the premium early in December of 1984. Also, the premium was not paid on the December due date nor at anytime thereafter.

The policy further provides:

GRACE PERIOD—DEFAULT IN PAYMENT OF PREMIUMS. A grace period of thirty-one days will be allowed for payment of each premium after the first. The policy will continue in force during the grace period unless surrendered. *Any premium not paid before the end of its grace period will result in default. Default will terminate this policy* as of the date on which the unpaid premium was due, except as provided by the surrender value options of this policy. (Emphasis added.)

This section clearly indicates that, upon the passing of the December 19 due date for the premium, a thirty-one day grace period commenced during which time the policy was continued in force. At the end of that thirty-one days, January 19, 1985, the policy would terminate unless the bal-

ance of the premium were paid before that date. No payment was made during the thirty-one days between December 19, 1984 and January 19, 1985 nor was any attempt to pay the premium ever made. Therefore, by the express terms of the contract, the policy coverage would have terminated on January 19, and no coverage would have been in existence at the time of the decedent's death.

However, in its letter in response to the insured's request to surrender the policy American States expressly states: "If we do not receive the policy and surrender form within 30 days, the policy will be continued in force and billed in the usual manner." Notwithstanding the policy's grace period provision, the American States letter clearly indicates that the policy will continue in force for at least thirty days from the date of the letter (January 10, 1985) and/or until the policy and surrender form were returned to American States. Accordingly, the Court concludes that the policy was not terminated by virtue of the premium default in December and the expiration of the 31–day grace period.

### 2.

Plaintiff alternatively argues that the policy remained in effect by virtue of its Automatic Premium Loan provision. Plaintiff stated in her deposition that she believed the premium would be paid automatically out of the cash value of the policy based on her reading of the defendant's letter of January 10, 1985 and the policy itself.

The "Automatic Premium Loan" provision of the policy states:

Any premium not paid before the end of its grace period will be automatically paid by charging the premium as a policy loan against the policy if (1) the automatic premium loan has been elected in the application for this policy or is elected in writing and received by the company at its home office while no premium is in default, . . . .

According to the policy language the Automatic Premium Loan provision must be affirmatively requested by the insured. There is no evidence that the plaintiff's husband ever requested this coverage either at the creation of the contract or anytime thereafter. It must therefore be concluded that the Automatic Premium Loan was not in effect for this policy.

Plaintiff claims that the letter of January 10, 1985 from American States led her to believe that the Automatic Premium Loan provision was in effect. The pertinent part of that letter states as follows:

You may apply for a loan against the cash value of your policy instead of surrendering it. The valuable protection provided by your policy continues in force although reduced by the amount of the outstanding loan.

There is only one other portion of the letter dealing with the Automatic Premium Loan provision. That portion says that if the loan is desired the insured should complete the enclosed Loan Policy Form. Since the form was never returned to American States it is obvious that the insured did not desire this provision to be in effect. The language of the letter and of the policy itself coupled with the lack of any affirmative requests on the part of the insured to activate the Automatic Premium Loan provision indicates that there was no loan provision in effect at the end of the grace period on January 19, 1985.

### B. JANUARY 28, 1985

■ The second ground for finding termination of the policy centers on the insured's efforts to surrender the policy for its cash value. The policy provides:

**ELECTION OF SURRENDER VALUE OPTIONS** The owner may elect any one of the following surrender value options by written request to the company at its home office in a form acceptable to the company. A surrender value option may be elected only while the insured is alive and no later than sixty days after the due date of the first unpaid premium for this policy.

**Cash Payment.** The owner may surrender this policy for its cash value less any policy loan and loan interest. Upon surrender, this insurance terminates. The company may postpone

payment of the surrender value of this policy for not more than six months.

On December 18, 1984, American States received the insured's requests to surrender the policy. In its January 10, 1985, letter in response American States informed the insured that to surrender the policy he would have to complete the Cash Surrender Form and return the form with the policy to American States. The letter further stated that if American States did not receive the form and policy within 30 days "the policy will be continued in force and billed in the usual manner." The insured completed the form and mailed it and the policy to American States on January 28, 1985, but died before the documents were received by American States.

Under the language of the policy the insured's request to surrender the policy had to be "by written request to the company at its home office in a form acceptable to the company." By the January 10 letter American States notified the insured of the acceptable form: completion of the surrender form and its return with the policy. The parties argue over whether the surrender became effective when the insured *mailed* the forms to American States or when the forms were *received* by American States. Each party relies on a fundamental principle of contract law, defendant the so-called "mailbox rule," and plaintiff the maxim that the offeror is the master of his offer. The "mailbox rule" is explained in 1 Corbin on Contracts § 78 (1963) as follows:

> Where the parties are negotiating at a distance from each other, the most common method of making an offer is by sending it by mail; and more often than not the offeror has specified no particular mode of acceptance. In such a case, it is now the prevailing rule that the offeree has power to accept and close the contract by mailing a letter of acceptance, properly stamped and addressed, within a reasonable time. The contract is regarded as made at the time and place that the letter of acceptance is put into the possession of the post office department.

However, Corbin further notes: "An offeror can always so word his offer and so limit the power of acceptance as to make the receipt of the acceptance necessary to the creation of a contract."

The parties agree that the policy's cash surrender provision constitutes a continuing offer to the insured, and that the insured had the power to create a contract by accepting that offer. Defendant argues that because "no particular mode of acceptance" was specified in either the policy or the January 10, 1985 letter, the mailbox rule applies and the cash surrender was effective upon the *posting* of the surrender form and the policy by the insured. Plaintiff responds that the January 10, 1985 letter required *receipt* of those documents before the surrender became effective. Numerous cases have been cited to the Court on the question of when acceptance of a cash surrender offer becomes effective. However, as both parties properly recognize, each of these cases turns on the particular policy language at issue, and, not surprisingly, none of these cases involves language identical to that in dispute in this case.

As previously noted, the policy provided that a request to surrender had to be "in a form acceptable to the company," and the parties agree that the January 10, 1985 letter set forth the "acceptable form." The proper focus, therefore, is on the language used in that letter. Reading the letter in its entirety the Court is satisfied that the receipt of the documents was necessary to effectuate the surrender. The letter directs the insured to "return the form with the policy," but also states: "If we do not receive the policy and surrender form within 30 days, the policy will be continued in force and billed in the usual manner." This sentence plainly indicates that the policy will remain in force, and hence no surrender will be effective, until the policy and surrender form are received by American States. Thus physical surrender of the policy, along with the completion and return of the surrender form, was necessary to the insured's acceptance of American States' continuing offer to pay the policy's surrender value. In this regard this case is

very similar to *Glasgow v. The Ohio State Life Ins. Co.*, C.A. No. 1942 (Wayne Cty. App.1984), where the applicable provision of the policy stated: "The surrender value of the policy will be paid by the Company upon receipt of written notice before the Insured's death and upon surrender of this policy." The court rejected the argument that the insured's mailing of the policies and the completed customer service application was in itself sufficient to effectuate the surrender.

Here, as in *Glasgow*, the insured did not have the complete power to accept the continuing offer, even though by his acts the insured did all that was necessary on his part to surrender the policy. There is no dispute that it was the insured's desire and intention to surrender the policy for its cash value, and that the mailing of the policy and surrender form in response to American States' letter is a clear manifestation of that intention. However, under the plain language of the letter, the policy continued in force until the cash surrender form and the policy were received by American States. As these documents were not received by American States until two days after the insured's death, the policy was in effect on the date of death.

### III.

For the foregoing reasons, the Court concludes that the insurance policy at issue was in effect at insured's death. Accordingly, the Court hereby renders JUDGMENT in favor of the plaintiff in the amount of $50,000.

IT IS SO ORDERED.