OPINION
The Cincinnati Insurance Company ("CIC") appeals from a summary judgment declaring that CIC is required by a policy of liability insurance it issued to Dayton United Metal Spinners Co., Inc. ("Dayton United") to defend and indemnify Dayton United against the claim of Richard Williams.
The liability policy that CIC issued to Dayton United was effective for the term beginning November 1, 1992 through November 1, 1995. The Common Policy Conditions section of the policy provides:
 B. CHANGES This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with out consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.
Among its various coverages, the CIC policy provided "Ohio Stop-Gap Employees Liability Coverage" that insured Dayton United against the risk of liability to its employees for intentional torts, according to the trial court's findings.
In October of 1993, CIC issued a General Change Endorsement, which stated that it is "[a]ttached to and forming a part of Policy No. CPP 064 51 10," the policy CIC had issued to Dayton United. The General Change Endorsement stated that, effective November 1, 1993, it was
 Deleting Ohio Stop-Gap Employers Liability Coverage Part GA513OH(3/90) Adding Ohio Liability coverage enhancement form GA216OH(2/93) attached.
The Ohio Liability Enhancement form GA216OH referenced in the General Change Endorsement was not, however, attached to it, according to the trial court's findings. The form, a copy of which has since been made an exhibit in this litigation, creates and explains the Ohio Liability Coverage, and is intended to form a part of the policy document. It is conceded that Ohio Liability Coverage imposes no duty on CIC to defend and indemnify Dayton United against Williams' claim.
On November 4, 1994, Richard Williams was injured while operating a punch press in the course of his employment by Dayton United. Williams brought this claim, alleging an intentional tort. CIC declined coverage of Williams' claim against Dayton United, arguing that the Stop-Gap Coverage that might have insured Dayton United against the risk of liability to Williams had terminated effective November 1, 1993, more than one year before Williams was injured. CIC also argued that the Liability Coverage Enhancement then in effect excludes employee intentional tort claims.
Dayton United added CIC as a third-party defendant in the action that Wilson brought. Dayton United asked the court to declare that CIC's policy requires it to defend and indemnify Dayton United against Williams' claim. CIC asked for a contrary declaration.
Motions for summary judgment were filed by CIC and by Williams and Dayton United, jointly. The motions were supported by affidavits setting out facts relevant to the coverage that existed on November 4, 1994, the date Williams was injured. More specifically, they addressed the General Change Endorsement, quoted above.
CIC's affiant stated that the General Change Endorsement and the "attached" Liability Enhancement Form GA216OH were "added to the policy" prior to Williams' injury, though he doesn't say how. Dayton United's affiant states that he never saw either form until they were shown to him by the company's attorney after the lawsuit was filed. Nevertheless, he attached a copy of the policy to his affidavit that contains the General Change Endorsement, but not the Liability Enhancement Form GA216OH.
Confronted with these sketchy scenarios, the trial court took them to mean that, prior to Williams' accident, CIC had sent and Dayton United had received the General Change Endorsement but not the Liability Enhancement Form. Dayton United agrees with that finding. CIC disputes the finding, arguing that the representations of its own affiant supports an inference that both documents were received by Dayton United.
Based on the foregoing facts, the trial court denied CIC's motion on a finding that the language of the General Change Endorsement, quoted above, was too ambiguous to give Dayton United notice of the change in its coverage. The court stated:
 "Without the attachment of the endorsement form, a reasonable person could construe the language of the notice to mean that a more comprehensive or enhanced policy was being added to the company's coverage in place of the Stop-Gap coverage. This ambiguity in the notice language must be construed strictly against the insurance company as a matter of law."
Decision, Order and Entry, p. 5
The trial court granted Dayton United and Williams' joint motion for summary judgment, finding that the Stop-Gap coverage was yet in place on the date of Williams' accident "[f]or the reasons discussed above." Id., p. 6. The court further requires CIC to defend and indemnify Dayton United against Williams' intentional tort claim.
CIC filed a timely notice of appeal, and now presents two assignments of error.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN OVERRULING CIC'S MOTION FOR SUMMARY JUDGMENT
Having found that Dayton United failed to receive the Ohio Liability Coverage Enhancement form GA216OH that should have been attached to the General Change Endorsement, the trial court found that the General Change Endorsement was itself too ambiguous to terminate Stop-Gap Coverage. CIC argues that there was no ambiguity, that Dayton United had a duty to make reasonable inquiries concerning the new coverage it was afforded, and that no coverage exists in any event.
With respect to issues of insurance coverage, "it is beyond question that any ambiguity will be resolved in favor of the insured and against the insurer." Thompson v. Preferred RiskMutual Insurance Company (1987), 32 Ohio St.3d 340, 342 (citations omitted.) An ambiguity exists when a term affecting a policy's coverage is reasonably susceptible to more than one meaning. Kingv. Nationwide Insurance Company (1988), 35 Ohio St.3d 208.
The General Change Endorsement states unequivocally that it is "Deleting Ohio Stop-Gap Employers Liability Coverage Part GA513OH (3/90)," the policy provision which the trial court found required CIC to defend and indemnify Dayton United against Williams' claim. The meaning of that statement is unambiguous and clear; after the effective date of the change, Stop-Gap coverage is no longer provided by CIC.
The ambiguity which the court found arises from the accompanying provision in the General Endorsement Form: "Adding Ohio Liability Coverage Enhancement form GA216OH (2/93) attached." That provision is not ambiguous, but merely unclear due to CIC's failure, as the trial court found, to attach form GA216OH setting out the new coverage. The issue, then, is whether that lack of clarity operates to extend the Stop-Gap intentional tort liability coverage that was otherwise terminated. We believe not.
A party to a contract is presumed to understand its terms concerning the rights and obligations it imposes. If he does not, he has a duty to make reasonable inquiries about what it may mean, for his own protection. Hines v. Aetna Casualty Surety Co.
(January 9, 1992), Cuyahoga App. No. 59600, unreported. This rule has particular application to a business that purchases a policy directly from the insurer, as opposed to an individual consumer who may rely on the representations of an issuing broker. Noterv. Volanski Agency, Inc. (Oct. 24, 1980), Cuyahoga C.P. 8575, 414 N.E.2d 450. Further, if the insured fails to discharge that duty, he may not be heard later to complain that his different understanding prevented the meeting of the minds required to form a contract of insurance or to amend an existing contract of insurance pursuant to its provisions.
CIC had the right to amend the terms of the policy during the period of its coverage "by endorsement issued by us and made a part of this policy." The General Endorsement form states that it is "Attached to and forming a part of Policy No. CPP 064 51 10," the policy that CIC had issued to Dayton United. It also states: "This endorsement changes the policy. Please read it carefully." If, as the trial court found, CIC failed to attach the Liability Coverage Enhancement form, that omission did not reasonably permit Dayton United to assume that Liability Coverage Enhancement insured against the risk of liability for intentional torts because its terminated Stop-Gap coverage had. Dayton United had a duty to inquire whether it did. Having failed in that duty, it cannot now claim that the General Change Endorsement's lack of clarity concerning the new coverage operated to prevent a meeting of the minds concerning the nature and scope of the amendment that created it, so as to render the amendment ineffective.
The trial court erred when it held that the "ambiguity" in the General Change Endorsement operated to continue CIC's duty to cover employee intentional tort claims on which CIC might be liable. The first assignment of error is sustained.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN GRANTING DAYTON UNITED SUMMARY JUDGMENT WHERE A MATERIAL ISSUE OF FACT EXISTS AS TO WHETHER FORM GA216OH FORMED A PART OF THE POLICY
This assignment of error is rendered moot by our resolution of the first assignment. Therefore, we exercise the discretion we are afforded by App.R. 12(A) (1) (c) and decline to determine the error assigned.
 Conclusion
Having sustained the first assignment of error, we will reverse the summary judgment for Dayton United on its motion and remand the case for further proceedings.
WOLFF, J. and FAIN, J., concur.
Copies mailed to:
David H. Roach, Esq.
Cinnamon S. Houston, Esq.
Christopher Johnson, Esq.
Richard S. Davis, Esq.
Stephen C. Findley, Esq.
Hon. Barbara Pugliese Gorman