{¶ 26} Although I agree with the majority's disposition of the first and fourth assignments of error, I disagree with the conclusions reached regarding the second and third assignments of error and, therefore, respectfully dissent.
 {¶ 27} The majority places great weight on the language employed by the Ohio Supreme Court as set forth in paragraph two of the syllabus in Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849. "Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment." (Emphasis added.) Id.
 {¶ 28} What the majority disregards, however, is that theGalatis court acknowledged that it was addressing "Ohio's law regarding whether uninsured and underinsured motorist insurance issued to a corporation may compensate an individual for a loss that was unrelated to the insured corporation." Id. at ¶ 2. TheGalatis court concluded that Ohio law did not support compensation for such a loss, despite what the majority claims is controlling syllabus law stating otherwise. In particular, the majority asserts that a "loss sustained" could include a loss of consortium claim if the "loss occur[red]" while the employee was working "within the course and scope of employment." I disagree.
 {¶ 29} The rationale underlying Galatis emanates from the general intent of a motor vehicle insurance policy issued to a corporation, which is "to insure the corporation as a legal entity against liability arising from the use of motor vehicles." Id. at ¶ 20, citing King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, 211. In that regard, "a motor vehicle operated by an employee of a corporation in the course and scope of employment is operated by and for the corporation and that an employee, under such circumstances, might reasonably be entitled to uninsured motorist coverage under a motor vehicle insurance policy issued to his employer." Id. An employee's activities outside the scope of employment, however, are not of any direct consequence to the employer as a legal entity. Id.
 {¶ 30} The majority mistakes this general intent to be one that covers an employee for a loss of consortium claim that may arise as a result of an accident between an uninsured/underinsured motorist and the employee's family member during the time that the employee was at work for the employer. Loss of consortium claims suffered by a corporation's employees that are unrelated to the business of the corporation are not risks that a corporation is likely to insure against. The majority, nonetheless, interprets the term "within" to mean "during" so as to find a viable claim. I cannot agree with this interpretation.
 {¶ 31} "Within," by definition, means "inside the limits of influence," "in the limits," or "in or to the inner part of." These alternative variations indicate that the term is used as a term of relation not a term of time. Thus, I interpret "within the course and scope of employment" as used in paragraph two of the syllabus to mean "related to the course and scope of employment." It therefore follows that a loss of consortium claim that arises from events unrelated to the furtherance of the corporation's business but that arguably may have arisen during the time the employee is otherwise employed, is a claim that is not related to the course and scope of employment and is, therefore, not compensable for uninsured/underinsured coverage purposes.