OPINION
{¶ 1} Appellant, Donegal Companies ("Donegal"), appeals from the judgment of the Ashtabula County Court of Common Pleas declaring appellees, Joyce and Dana Swift, entitled to the full amount of underinsured motorist coverage under Donegal's policy, minus the amount paid by the tortfeasor's insurer. We affirm.
 {¶ 2} On November 19, 1998, appellee Joyce Swift was injured in an automobile accident.[1] The tortfeasor's insurer, Progressive Insurance Company, paid appellees its policy limit of $25,000. At the time of the accident, Joyce Swift was driving a Federal Express vehicle in the course and scope of her employment as a courier for the company. Federal Express was insured by Sentry Insurance with a $5,000,000 policy limit. Throughout the litigation, however, Federal Express maintained it had properly rejected UM/UIM coverage and therefore appellant was entitled to no such coverage under Sentry's contract.
 {¶ 3} Donegal provided coverage to appellees on their personal automobiles. Appellees' policy limits under the Donegal policy were $100,000 each person, $300,000 each accident. Donegal's policy included UM/UIM coverage. The policy also included an "other insurance" provision which stated:
 {¶ 4} "4. If the coverage under this policy is provided:
 {¶ 5} "A. On a primary basis, we will pay only our share of the loss that must be paid under the insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.
 {¶ 6} "B. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis."
 {¶ 7} On April 5, 2001, Sentry moved for summary judgment seeking a declaratory judgment regarding Federal Express's rejection of UM/UIM coverage. On April 11, 2002, the trial court denied Sentry's motion. In doing so, the court determined Sentry failed to send a valid written offer that Federal Express could properly reject. The following day, the court ordered all parties to participate in mediation. During the mediation process, on July 1, 2002, Sentry moved the court to reconsider its April 11, 2002 judgment entry. While this motion was still pending, Sentry agreed to settle appellees' claims in the sum of $543,750. Sentry was ultimately dismissed from the litigation.
 {¶ 8} Donegal did not settle during mediation but tendered what it claimed was a pro-rata share of the settlement, i.e., $8,156.25.[2] The record indicates Donegal ultimately increased its offer to $20,000; however appellees did not accept the offer. On August 13, 2002, appellees filed their Brief in Support of Donegal Providing Primary Insurance Coverage seeking the full coverage amount minus the amount paid by the tortfeasor's insurer. Appellees pointed out Donegal's policy contained specific UM/UIM coverage provisions. While the trial court engrafted UM/UIM coverage into the Sentry policy, it was silent as to whether the coverage was primary or excess. Further, appellees directed the court's attention to the "other insurance" provision which detailed appellant's responsibilities in the event coverage was on a "primary basis" or "excess basis." Appellees argued the phrases "primary basis" and "excess basis" were left undefined without giving any indication as to whether the UM/UIM coverage, in the instant matter, was primary or excess. Accordingly, appellees maintained the contract contained an inherent ambiguity which should be strictly construed against Donegal. Accepting this conclusion, appellees would be entitled to primary coverage and the full coverage amount less that paid by Progressive.
 {¶ 9} In response, Donegal filed its Brief in Support of Providing Coverage on a Pro Rata Basis on August 29, 2002. Donegal argued Sentry was the primary insurer in the matter as appellee was injured while driving a vehicle in the scope of her employment. However, Donegal contended, "in an act of good faith toward it's [sic] insured, Donegal has proceeded as if it is sharing primary coverage with Sentry." In Donegal's view, therefore, where both policies are primary, each insurer pays its pro-rata share of the liability. Donegal further asserted the phrases "primary basis" and "excess basis," when given their plain and ordinary meaning in the context of the insurance contract, are not ambiguous.
 {¶ 10} On June 4, 2004, after considering the arguments of the parties, the court rendered judgment in appellees' favor. The court determined:
 {¶ 11} "The * * * language regarding `Other Insurance' in the Donegal policy is ambiguous, as it appears to this Court that `primary basis' and `excess basis' are left undefined. King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, at syllabus states, `Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.' Applying King to the Donegal policy at issue, the language regarding `Other Insurance' is susceptible to more than one interpretation, and therefore the court will construe this language to the benefit of the insureds in this case, * * *."
 {¶ 12} The court determined appellees were entitled to Donegal's full policy limits, less an amount paid to them by the tortfeasor. On June 28, 2004, Donegal filed a timely appeal and asserts the following assignment of error:
 {¶ 13} "The trial court erred in ordering that plaintiffs are entitled to Donegal's policy limits less the tortfeasor's limits."
 {¶ 14} An appellate court reviews a trial court's ruling on a summary judgment motion de novo. Herschell v. Rudolph, 11th Dist. No. 2001-L-069, 2002-Ohio-1688, at 7. Accordingly, we examine the entire record independently without deference to the trial court's determinations. Id. We will affirm the trial court's award of summary judgment if the record demonstrates, after reviewing the evidence most strongly in the nonmoving party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); see, also, Zivich v. Mentor Soccer Club, Inc.,82 Ohio St.3d 367, 369-370, 1998-Ohio-389.
 {¶ 15} The thrust of Donegal's position can be summed up accordingly: Both Donegal and Sentry are admittedly primary insurers covering the same risks, viz., damages incurred from injuries occasioned by an underinsured motorist. Under such circumstances, where one of two primary policies contains a pro-rata clause, that insurer is required to pay its proportionate share of the liability. Here, Donegal contends its policy contained a pro-rata clause and therefore it is required to pay appellees its pro-rata share, i.e., $8,156.25, not the full policy amount less the amount paid by the tortfeasor's insurer.
 {¶ 16} We first note Donegal's argument presumes a crucial fact not supported by the record: Donegal argues Sentry, at some point prior to its settlement with appellees, admitted its status as a primary insurer for purposes of UM/UIM coverage. However, we find no evidence of this assertion; on the contrary, whether Sentry provided UM/UIM coverage at all was a (if not the) fundamental issue in dispute prior to Sentry's settlement with appellees. Throughout the proceedings below, Sentry maintained its policy insuring Federal Express did not provide UM/UIM coverage. Sentry believed that it had validly offered and Federal Express had properly rejected UM/UIM coverage. The implications of Sentry's argument are clear: If UM/UIM coverage was never part of the Sentry/Federal Express contract, there would be no need to examine whether the non-existent coverage is "primary" or "excess."
 {¶ 17} That said, the trial court considered Sentry's argument and disagreed with its conclusion. Specifically, the court determined Sentry failed to send a proper written offer of UM/UIM coverage to Federal Express pursuant to Gyori v. Johnston Coca-Cola Bottling Group, Inc.,76 Ohio St.3d 565, 567, 1996-Ohio-358 and Linko v. Indemnity Ins. Co. ofNorth Am., 90 Ohio St.3d 445, 448-449, 2000-Ohio-92. Without a valid offer any subsequent rejection of the coverage is likewise invalid. Therefore, the trial court determined UM/UIM coverage would be engrafted into the Federal Express policy as a matter of law. See, e.g., Gyori,
supra, at 565-567.
 {¶ 18} It bears noting that the trial court's judgment did not explicitly address the scope of the UM/UIM coverage engrafted into the policy. It is because of this omission the current matter is substantively distinguishable from Kasson v. Goodman, 6th Dist. No. L-01-1432, 2002-Ohio-3022, the primary authority upon which Donegal relies. InKasson, the court determined UM/UIM arose by operation of law on a business policy possessed by the plaintiff's employer. In so doing, the court found the UM/UIM coverage primary. Here, the court made no such specific finding. However, any such discussion was of no moment as Sentry subsequently settled with appellees before the case went to trial. In so doing, Sentry did not admit the UM/UIM coverage engrafted into the Federal Express policy was primary. In fact, the pre-trial settlement did not act as an admission of liability on the part of Sentry. To be sure settlements, in general, may be probative of an inference of liability. However, this is precisely the reason why any such evidence is explicitly excluded by Evid.R. 408. Evid.R. 408 provides, in pertinent part:
 {¶ 19} "Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. * * *"[3]
 {¶ 20} Donegal's argument presumes Sentry's settlement was an admission of primary coverage and, in doing so, assumes the settlement was indicative of Sentry's liability. Sentry neither conceded these issues nor were they finally adjudicated by the court; although the trial court rendered its decision regarding UM/UIM coverage arising as a matter of law, Sentry immediately filed a motion for reconsideration of the matter. While this motion was pending, Sentry settled with appellees. Given these procedural dynamics, Sentry did not admit liability and, by implication, did not admit their policy provided primary UM/UIM coverage. As there was no evidence put forth regarding the scope of the engrafted UM/UIM coverage, we will not impute an admission of primary coverage into the Sentry policy. Moreover, any recourse to the Sentry's settlement with appellees to glean such inference is prohibited by Evid.R. 408.
 {¶ 21} That said, in its brief, Donegal admits its status as a primary insurer. Donegal has never disputed appellees' entitlement to UIM coverage under its policy. Rather, the current appeal is grounded upon Donegal's contention that both Sentry and itself provided primary coverage and therefore it is obligated to pay only on a pro-rata basis. Sentry's settlement precludes any inferences as to its liability and, by implication, its status as a primary or excess insurer. Accordingly, Donegal is the only primary UM/UIM insurer in the current matter and appellees are entitled to the full policy amount less the amount paid by the tortfeasor's insurance company.
 {¶ 22} Furthermore, we believe the trial court properly found Donegal's policy ambiguous in the context of the UM/UIM coverage. The UM/UIM coverage fails to provide any direction as to whether Donegal is a primary, excess, or pro-rata carrier under the circumstances. While the terms "primary basis" and "excess basis" possess a plain and ordinary meaning, we have no way of knowing which coverage applies here because we cannot know whether the UM/UIM coverage engrafted into Sentry's policy was primary or excess. Accordingly, the Donegal policy is ambiguous and the trial court properly construed the language against Donegal. Appellant's sole assignment of error is without merit.
 {¶ 23} For the above reasons, the decision of the Ashtabula County Court of Common Pleas is hereby affirmed.
O'Neill, J., O'Toole, J., concur.
[1] The record fails to detail the amount of damages to which appellees believed they were entitled. In their complaint, appellees assert appellee Joyce Swift suffered permanent injury as a result of the accident and has "incurred substantial medical expenses and expects to incur further medical expenses in the future." However, we find no evidence of a specific allegation regarding damages or a stipulation to damages agreed upon by the parties. As no party to this appeal objects to or otherwise takes issue with this omission, we shall proceed with our analysis of the specific issues before us.
[2] While appellant consistently utilizes this figure as the amount it would owe pro-rata, the record does not reveal the manner in which it arrived at this amount.
[3] It bears noting that the exclusionary principle of Rule 408 only applies where a settling party disputes liability of an amount of a claim. The exclusion will not operate where settlement discussions relate to an amount that is admittedly due. The amount of the claim must be in dispute or, in the alternative, liability for the claim must be contested in order for Evid.R.408 to operate to exclude the evidence. Weissenberger's Ohio Evidence, 2004 Courtroom Manual, Chapter 408, p. 143. Here, Sentry disputed liability throughout the proceedings below and, at no point, admitted appellees were entitled to UM/UIM under the policy it issued to Federal Express.