KAREN NELSON MOORE, concurring in part and dissenting in part.
I concur in the majority opinion’s holding that Coregis breached its duty to defend Sandusky. However, I believe that the award of attorney fees against San-dusky should properly be considered a form of damages under the language of the policy and according to the relevant Ohio precedent, and I respectfully dissent as to this issue.
The majority asserts that the contractual definition of damages is unambiguous and that it clearly does not extend to fees incurred on the basis of claims seeking non-monetary relief. Majority Op. at 360. As support for this proposition, the majority highlights the following policy language: “We will pay those sums that the Insured becomes legally obligated to pay as damages ... because of ‘personal injury’ ... to which this insurance applies.” Joint Appendix (“J.A.”) at 96. This statement requires that the damages flow from a covered injury, but it does not provide any clarification as to the definition of damages. Because there is no dispute that the § 1988 fee award was incurred by San-dusky as a result of the underlying discrimination suit, this language is not relevant to the underlying question of whether the attorney fees can be considered damages under the contract.
We are thus still left with the following contractual definition of damages: ‘With respect to ‘personal injury[,]’ damages means monetary sums and excludes all forms of injunctive relief and declaratory judgments.” J.A. at 103. The term “monetary sums” is not defined, just as the term “money damages” was not defined in City of Kirtland v. Western World Insurance Co., 43 Ohio App.3d 167, 540 N.E.2d 282, 285 (1988). The Kirtland court concluded that “[s]ince the term ‘money damages’ was not defined in the policy, for purposes of this discussion and under these circumstances, this court holds that the attorney fees awarded appellee were money damages.” Id. at 285. In that case, the city sought indemnity for attorney fees it had to pay in the underlying suit, which only involved claims for equitable relief. Id. at 167. The insurance policy did not require the insurance company to “make payment for loss in connection with” actions seeking equitable relief, just as in the case before us. Id. at 284-85. Given this, Kirtland’s holding that the insurer was obligated to pay the attorney fees undermines the majority’s argument that the contractual definition of damages “does not include sums payable only because of the success of claims that were plainly not otherwise covered by the insurance policy.” Majority Op. at 360. The majority distinguishes Kirtland on the ba *364 sis that the term “money damages” was ambiguous, but it fails to acknowledge the similarity of the language and the fact that the underlying claims in Kirtland were equitable. Majority Op. at 860 n. 2.
In 2004, the Ohio Court of Appeals again analyzed whether an award of attorney fees as a form of costs pursuant to an Ohio statute were properly considered “damages” under an insurance policy. Sylvania Twp. Bd. of Trs. v. Twin City Fire Ins. Co., No. L-03-1075, 2004 WL 226115, at *2 (Ohio App. Feb. 6, 2004).[6] Unlike in Kirtland, the policy in Sylvania did define “damages” as “monetary judgment, award or settlement ...” Id. at *5. However, the court noted that this definition was similar to the policy provision in Kirtland because it “[did] not uniquely defíne key terms— ‘monetary judgment’ or ‘award.’ ” Id. The court then looked to the “common meaning” of “monetary judgment” and “award,” and it concluded that such terms could include an award of attorney fees. Id. There is no meaningful distinction between the terms “monetary judgment” and “monetary sums,” except the latter may in fact be broader in scope. Sylvania thus provides further support for Sandusky’s argument that the term “monetary sums” is ambiguous.
Because this is a diversity case, we are bound to follow the Ohio state court decisions in Kirtland and Sylvania. See Ruth v. Bituminous Cas. Corp., 427 F.2d 290, 292 (6th Cir.1970) (“[W]here the highest court of the State has not spoken, this Court is obligated to follow published intermediate state appellate court decisions unless we are convinced that the highest state court would decide differently.”). There is no basis to believe that the Ohio Supreme Court would decide this issue differently, in light of two different appellate court decisions. Rather, the existence of these two cases supports Sandusky’s position that the policy language was in fact “reasonably susceptible of more than one interpretation” and accordingly should be “construed strictly against [Coregis].” King v. Nationwide Ins. Co., 35 Ohio St.3d 208, 519 N.E.2d 1380, 1383 (1988). Accordingly, I would reverse the district court’s judgment against Sandusky on its claim that it is entitled to reimbursement from Coregis for the § 1988 attorney fees awarded to the plaintiffs in the underlying class action suit.

. Ohio Supreme Court Rule 4(A) for the Reporting of Opinions states as follows: "Notwithstanding the prior versions of these rules, designations of, and distinctions between, 'controlling' and 'persuasive' opinions of the courts of appeals based merely upon whether they have been published in the Ohio Official Reports are abolished.” (These Rules became effective on May 1, 2002.) Rule 4(B) states that "[a]ll court of appeals opinions issued after the effective date of these rules may be cited as legal authority and weighted as deemed appropriate by the courts.”