DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Randy Raboin, appeals from an entry of summary judgment that was entered against him and in favor of appellee, Auto-Owners Ins. Co. For the reasons that follow, we reverse the judgment of the trial court.
 {¶ 2} This case arises out of a collision that occurred on the morning of September 6, 2001, when a tractor, operated by Raboin, was struck by a van, driven by *Page 2 
Rita Zorn. At the time, Raboin was acting within the course and scope of his employment with Chefs Garden, Inc. The tractor had been leased to Chefs Garden by Fiddle Dee Dee, Inc.
 {¶ 3} Raboin settled with the tortfeasor, and then filed the instant action against Auto-Owners. Although the suit against Auto-Owners involved claims seeking various types of recovery under three separate insurance policies that the company had issued to two different insureds, the only claims that are relevant to the instant appeal are those seeking recovery of UM/UIM benefits under an automobile insurance policy that had been issued to Chefs Garden.
 {¶ 4} Auto-Owners filed a motion for summary judgment, arguing, among other things, that underinsured motorist benefits were not available to Raboin under the Chefs Garden automobile policy. Raboin opposed the motion for summary judgment and, further, requested that the court consider his opposition to be a cross-motion for summary judgment. In a judgment entry dated April 3, 2007, the trial court granted the motion for summary judgment filed by Auto-Owners in its entirety. Raboin timely appealed the judgment, raising the following assignment of error:
 {¶ 5} I. "THE TRIAL COURT ERRED BY ENFORCING THE `OTHER OWNED AUTO' EXCLUSION BECAUSE THAT EXCLUSION, BY ITS OWN TERMS, DOES NOT APPLY TO VEHICLES SPECIFICALLY COVERED FOR UIM, AND THE UIM ENDORSEMENT COVERS ALL VEHICLES THAT ARE COVERED FOR LIABILITY COVERAGE." *Page 3 
 {¶ 6} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Civ.R. 56(C) provides:
 {¶ 7} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as considered in this rule. * * *"
 {¶ 8} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party.Ryberg v. All state Ins. Co. (July 12, 2001), 10th Dist. No. 00AP-1243, citing Tokles Son, Inc. v. Midwestern Indemnity Co. (1992),65 Ohio St.3d 621, 629.
 {¶ 9} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the non-moving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once this burden has been satisfied, the non-moving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. *Page 4 
 {¶ 10} Specifically at issue in the instant case is whether the tractor operated by Raboin at the time of the accident had UIM coverage under the Chefs Garden automobile insurance policy.
 {¶ 11} A court's main objective when construing an insurance contract is to give a reasonable construction to the contract in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed. Yoder v. ProgressiveCorp., 11th Dist. No. 2005-G-2633, 2006-Ohio-5191, ¶ 9. A contract whose terms are clear and unambiguous leaves no issue of fact, and must be interpreted as a matter of law. Inland Refuse Transfer Co. v.Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322. Where ambiguous terms do exist, however, those terms must be construed strictly against the insurer and liberally in favor of the insured.King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 211.
 {¶ 12} The policy in question, with a policy period from November 30, 2000 to November 30, 2001, pertinently provides as follows. On the first page, under the heading, "INSURING AGREEMENT," it is written that:
 {¶ 13} "The attached Declarations describe the automobile(s) we insure and the Coverages and Limits of Liability for which you have paid a premium. We agree to insure the described automobile(s) for those Coverages and Limits of Liability subject to the terms and conditions of this policy. * * * "
 {¶ 14} The policy Declarations include a listing of 17 motor vehicles, identified separately by model, year, and vehicle identification number. Listed along with each of *Page 5 
the 17 identified vehicles is a description of the types and amounts of coverage provided for each vehicle. As it happens, all of the 17 vehicles are identified as having: (1) liability coverage in the amount of $500,000 for each occurrence; and (2) UM/UIM coverage in the amount of $500,000 for each person and $500,000 for each occurrence.
 {¶ 15} Also listed in the Declarations as an item insured is a category of automobiles identified as "hired automobiles." Under coverages for "hired automobiles," the Declarations state only that there is liability coverage. There is no mention whatsoever of UM/UIM coverage. As with the 17 enumerated vehicles, the liability coverage amount is set at $500,000 for each occurrence.
 {¶ 16} At another section of the policy, entitled "UNDERINSURED MOTORIST COVERAGE," it is relevantly provided:
 {¶ 17} "2. COVERAGE
 {¶ 18} "a. We will pay compensatory damages an injured person is legally entitled to recover:
 {¶ 19} "(1) from the owner or operator of an underinsuredautomobile;
 {¶ 20} "(2) for bodily injury sustained while occupying or getting into or out of an automobile that is covered by SECTION II — LIABILITYCOVERAGE of the policy.
 {¶ 21} "* * *
 {¶ 22} "3 EXCLUSIONS
 {¶ 23} "Underinsured Motorist Coverage does not apply: *Page 6 
 {¶ 24} "a. to bodily injury sustained by any person while occupying or getting into or out of any automobile:
 {¶ 25} "(1) owned by, furnished to, or available for the regular use of you, any other named insured or a relative of yours; or
 {¶ 26} "(2) that is not a replacement or additionalautomobile covered by the terms and conditions of the policy; ifsuch automobile is not specifically covered for underinsured motoristcoverage by the policy.
 {¶ 27} "* * *
 {¶ 28} "4. LIMIT OF LIABILITY
 {¶ 29} "We will pay compensatory damages for bodily injury up to theLimit of Liability for Underinsured Motorist Coverage stated in theDeclarations * * *." (Italics added.)
 {¶ 30} It is undisputed in this case that the tractor Raboin was operating was a "hired automobile" within the meaning of the policy. Also undisputed is that the tractor was not one of the 17 specifically-identified vehicles listed in the Declarations.
 {¶ 31} Appellant argues that the question of whether UIM coverage extends to the tractor in this case is answered in that portion of the policy entitled "UNDERINSURED MOTORIST COVERAGE," at section 2a(2). Section 2a(2) clearly states that Auto-Owners will pay UIM benefits for automobiles "covered by SECTION II — LIABILITY COVERAGE of the policy." Thus, under that section, it would appear that the tractor, which, as a "hired automobile," is covered by liability coverage under the policy, also *Page 7 
has, by virtue of that liability coverage, the added benefit of underinsured motorist coverage.
 {¶ 32} Arguing against this conclusion, Auto-Owners urges a reading of the policy that would extend UIM coverage only to the 17 vehicles named in the Declarations. In support of such a reading, Auto-Owners points to the first page of the policy wherein it is stated that the Declarations describe both the automobiles insured under the policy and the coverages and limits of liability for the described vehicles. As indicated above, the Declarations portion of the policy lists only liability coverage for "hired vehicles," but lists both liability and UIM coverage for the 17 specifically enumerated vehicles. While we agree that the intention of the Declarations apparently conflicts with that of section 2a(2), the conflict merely renders the contract ambiguous. As ambiguous terms must be construed strictly against the insurer and liberally in favor of the insured, we are constrained to read the competing provisions in favor of Raboin. See King, supra, at 211.
 {¶ 33} A similar situation arises when we consider paragraph 4 of "UNDERINSURED MOTORIST COVERAGE," providing that that UIM benefits will be provided "up to the Limit of Liability for Underinsured Motorist Coverage stated in the Declarations * * *." Although this provision would seem to indicate that there is no UIM coverage unless there is an affirmative statement of UIM coverage in the Declarations, such indication would contradict the express grant of coverage provided at section 2a(2). As before, the resulting ambiguity is necessarily construed in favor of Raboin. See id. *Page 8 
 {¶ 34} Lastly, we look to Exclusion 3a, which provides that underinsured motorist coverage does not apply if the subject automobile "is not specifically covered for underinsured motorist coverage by the policy." According to Auto-Owners, such exclusion limits coverage to the 17 vehicles specifically described in the Declarations. Raboin, on the other hand, argues that the tractor was, in fact, "specifically covered" for UIM coverage, thanks to section 2a(2), which expressly provides that vehicles having liability coverage also have UIM coverage. Again, we are faced with an ambiguity that must be read in favor of Raboin. Id.
 {¶ 35} Regarding the amount of coverage available in this case, we note that for every other vehicle UM/UIM coverage was offered and accepted at the same limit as the liability coverage — that is, $500,000. It follows from this that the tractor, which had liability coverage in the amount of $500,000, likewise has a UIM coverage limit of $500,000.
 {¶ 36} For all of the foregoing reasons, appellant's sole assignment of error is found well-taken. The judgment of the Erie County Court of Common Pleas is reversed. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
 JUDGMENT REVERSED. *Page 9 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
 Arlene Singer, J., William J. Skow, J., Thomas J. Osowik, J., CONCUR. *Page 1