DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Ottawa County Court of Common Pleas which granted the motion for summary judgment filed by Auto Owners Insurance Company ("Auto Owners") on the declaratory judgment action filed by appellants, Nello F. Bianchi ("Bianchi") and Justine Bianchi. For the reasons that follow, we reverse, in part, and affirm, in part, the decision of the trial court.
This matter arose out of a collision, occurring on January 15, 1997, between Robert D. Cates, who was driving an uninsured motor vehicle, and Bianchi, who was a pedestrian. Bianchi, who was chairman of the Put-In-Bay Township Trustees, was on his way to the Township Hall at the time of the accident. Appellants filed a complaint for declaratory judgment on July 15, 1998 against the administrator of the estate of Cates and Auto Owners. Appellants sought insurance coverage pursuant to the uninsured motorist ("UM") provision of the township's commercial automobile liability policy ("the policy") and its umbrella policy ("the umbrella policy"). Both appellants and Auto Owners filed motions for summary judgment, responses, and reply briefs thereto.
On March 1, 2000, the trial court granted Auto Owners' motion for summary judgment. The trial court found that Bianchi was not a named insured under the liability portion of the policy and was not entitled to UM coverage as he did not qualify under any of the definitions of insured in the UM portion of the policy. The trial court also found that Justine Bianchi could not recover UM coverage because UM coverage did not apply to her husband's bodily injury claim. With respect to the umbrella policy, the trial court found that the township had rejected UM coverage on that policy and, therefore, appellants were not entitled to any recovery. As such, the trial court granted Auto Owners' motion for summary judgment and denied appellants' motion.
Appellants appealed the decision of the trial court and raise the following assignments of error:
 "1. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFS WHEN IT GRANTED JUDGMENT TO THE DEFENDANT AUTO-OWNERS ON THEIR MOTION FOR SUMMARY JUDGMENT ON THE AUTO-OWNERS INSURANCE POLICY.
 "2. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFS WHEN IT GRANTED JUDGMENT TO THE DEFENDANT AUTO-OWNERS ON THEIR MOTION FOR SUMMARY JUDGMENT ON THE UMBRELLA POLICY."
Assignment of Error No. 1
In their first assignment of error, appellants argue that the trial court incorrectly granted Auto Owners' motion for summary judgment for the following reasons: (1) Bianchi was an insured under the policy and his exclusion from UM coverage was in contravention of R.C. 3937.18,Martin v. Midwestern Group Ins. Co. (1994), 70 Ohio St.3d 478, Landis v.Grange (1994), 95 Ohio App.3d 422, and State Farm v. Alexander (1992),62 Ohio St.3d 397; (2) Bianchi was an "individual" and therefore included in the definition of "insured" with respect to UM coverage (see policy section III(A)(2)(a)); (3) the township was an "individual" under the UM portion of the policy and, as such, Bianchi would be an insured under the terms of the policy; and (4) the policy is ambiguous with respect to who is an insured and, therefore, must be construed in favor of appellants.
This court notes at the outset that in reviewing a motion for summary judgment, we must apply the same standard as the trial court. LorainNatl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
In order to determine whether appellants are entitled to UM coverage, we must first determine whether Bianchi was an insured under the liability portion of the policy. Section III(A)(1) defines "insured" as follows:
 "* * * the named insured and any person using the automobile and any person or organization legally responsible for its use, provided the actual use thereof is with the permission of the named insured or if the named insured is an individual, with the permission of an adult member of the household who is not a chauffeur or domestic servant."
Put-In-Bay Township is the only named insured in the policy. Moreover, we also note that Bianchi was not using any covered automobile at the time of the collision.
Appellants, however, argue that the "Governmental Function Endorsement" includes appellant as an insured under the liability portion of the policy. The "Governmental Function
Endorsement" states as follows:
 "In consideration of the premium at which this policy is written, it shall be a condition hereof and of the policy that the immunity provided by law for a State or political subdivision of a State shall not be set up as a defense by the Company, unless requested to do so by the State or political subdivision, but that in the event of any suit or cause of action in relation to bodily injuries or property damage arising out of a claim against the insured because of any accident involving the automobile described in the policy, such action shall be tried on its merits only in the same manner and under the same conditions as though the named insured were a private individual or corporation.
 "The term `State' shall mean any department or educational or other institution of the State, or any officer or employee thereof, and the term `Political Subdivision' shall mean any county, township, city, town or school corporation or any officer, employee or agent thereof.
 "All other conditions of the policy to remain unchanged." (Emphasis added.)
Contrary to appellants' argument, we find that, by its terms, this endorsement does not alter any other condition of the policy. Hence, this endorsement does not alter the definition of "insured," as quoted above. This endorsement simply addresses the issue of when an immunity defense will be raised by Auto Owners on behalf of a political subdivision and its officers, employees, or agents. As such, we find that it does not support appellants' argument that Bianchi was an insured under the policy.
Based on the foregoing, we find that Bianchi was not a named insured under the liability portion of Auto Owners' policy. We therefore must next consider whether Bianchi qualified for UM coverage under the terms of the policy. Auto Owners' policy with the township provides UM coverage as follows:
 "D. UNINSURED MOTORIST. "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, and arising out of the ownership, maintenance or use of such uninsured motor vehicle; * * *"
Section III of the policy defines "insured" for purposes of Coverage D, UM coverage, as follows:
"III. DEFINITIONS.
"A. "INSURED" shall mean:
 * * * "(2) wherever used in Coverage D [UM coverage], and in other parts of this policy when applicable thereto:
 "(a) the first named insured if an individual and not a corporation, firm or partnership, and, while residents of the same household, the spouse of the first named insured and, if not owning any automobile, the relatives of either;
 "(b) any person while in, upon, entering or alighting from an automobile to which Coverage A [liability coverage] of this policy applies;
 "(c) any person with respect to damages he is entitled to recover for care or loss of services because of bodily injury to which Coverage D applies."
Pursuant to section III(A)(2)(a), Bianchi is not "the first named insured" and, therefore, that section does not facially provide a basis for coverage. With respect to section III(A)(2)(b), Bianchi was not "in, upon, entering or alighting from an automobile" to which the liability coverage of the township's policy applied; rather, he was a pedestrian at the time of the accident. Obviously, if Bianchi was not an insured under the UM coverage portion of the township's policy, Justine Bianchi would not be entitled to coverage pursuant to section III(A)(2)(c).
Appellants argue that Martin v. Midwestern Group, Inc. (1994),70 Ohio St.3d 478, provides that UM coverage must be provided to appellants. Martin states that R.C. 3937.18 mandates UM coverage be provided where: "(1) the claimant is an insured under a policy which provides uninsured motorist coverage; (2) the claimant was injured by an uninsured motorist; and (3) the claim is recognized by Ohio tort law."Martin, supra at 481. We, however, find that Martin fails to establish an entitlement to UM coverage as to appellants because Bianchi was not an insured under the liability portion of the policy.
Appellants next argue that UM coverage must be provided because Auto Owners' definition of insured under the UM portion of the policy is unenforceable, pursuant to R.C. 3937.18, insofar as the township is afforded greater liability coverage than UM coverage. Specifically, appellants argue that the definition of "insured" is broader under the liability portion of the policy than under the UM coverage portion because, according to appellants, Bianchi is a covered insured under the liability portion of the policy, but would only be covered under the UM portion of the policy if he had been "in, upon, entering or alighting from" a covered automobile. We disagree.
Insofar as Bianchi was not an insured under the liability portion of the policy, we find that he is not automatically entitled to UM coverage. Moreover, we note that the Ohio Supreme Court has held that "[n]othing in R.C. 3937.18 or Martin prohibits the parties to an insurance contract from defining who is an insured person under the policy. Wayne Mut. Ins. Co. v. Mills (1996), 118 Ohio App.3d 146, 154."Holliman v. Allstate Ins. Co. Corp. (1999), 86 Ohio St.3d 414, 416-17.
Appellants next argue that Landis v. Grange Mut. Ins. Co. (1994),95 Ohio App.3d 422, establishes that an exclusion requiring plaintiff to be "occupying" an insured vehicle at the time he was injured is contrary to R.C. 3937.18 because it eliminates the mandated UM coverage for a cause of action recognized by Ohio tort law. In Landis, plaintiff was struck by an underinsured motorist while walking along the road looking for a trim ring that had come off of his employer's vehicle, which he was driving at the time. The employer's vehicle was covered by the employer's commercial policy. Landis was listed in a separate schedule as a "designated insured" to receive automobile liability and uninsured/underinsured motorists coverage with limits up to $1,000,000. Landis also had automobile liability coverage when operating automobiles owned by his employer, or any automobile when being operated for purposes of garage operations related to the employer's business. However, Landis' UM coverage was limited to instances when he was "occupying"[1] an "insured highway vehicle," defined in the policy to be a vehicle owned by the employer. In Landis, this court found that based on the holding inState Farm Auto. Ins. Co. v. Alexander (1992), 62 Ohio St.3d 397, the limitation of UM coverage was contrary to R.C. 3937.18, insofar as it eliminated underinsured motorist coverage to appellee even though his claim arose from a cause of action recognized by Ohio tort law.
In this case, however, we find that the holdings in Landis, supra, andAlexander, supra, are distinguishable from the facts in this case. We do not dispute that the intent of R.C. 3937.18 is to provide UM coverage for injured persons who have a legal cause of action against a tortfeasor, but who are uncompensated because the tortfeasor is either (1) not covered by liability insurance or (2) covered in an amount that is less than the insured's uninsured motorist coverage. See Alexander at 400. However, R.C. 3937.18 only requires that UM coverage be "offered to persons insured under the [liability] policy" of insurance. In bothLandis and Alexander, the parties seeking UM coverage were also insureds under the liability portion of the applicable policies. In this case, Bianchi was not an insured under the liability portion of Auto Owners' policy. As such, we find that the limiting language in the township's UM coverage does not violate the mandate of R.C. 3937.18 and is not contrary to the holdings in Landis and Alexander.
Appellants next argue that because Bianchi is an insured under the liability portion of the policy and is an individual, he is entitled to UM coverage pursuant to section III(A)(2)(a). Insofar as we have already held Bianchi is not insured under the liability portion of Auto Owners' policy, we find appellants' argument to be without merit.
Appellants next argue that they are entitled to UM coverage pursuant to section III(A)(2)(a) because the township is an "individual." Specifically, appellants argue that the "named insured" is the township, which is also a political subdivision, and that the definition of a "political subdivision" in the policy includes "any county, township * * * or any officer, employee or agent thereof." Thus, appellants argue that "with the named insured being a political subdivision the policy also made any officer, employee or agent thereof the named insured." We disagree with this analysis. As stated above, the Governmental Function Endorsement has limited application and specifies that all other conditions of the policy remained unchanged. Accordingly, we find that the definition of "political subdivision" does not expand the definitions of "named insured" or "individual" as they apply to UM coverage.
Finally, appellants argue that the clauses in the policy are either unenforceable or ambiguous and, as such, should be construed in appellants' favor. Specifically, appellants assert that section III(A)(2)(a) is "vague and ambiguous, especially when read in conjunction with the `Employers' Non-Ownership Liability' and `Governmental Function' endorsements." In support of their argument, appellants rely onScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660;King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208; and Faruque v.Provident Life Acc. Ins. Co. (1987), 31 Ohio St.3d 34. Appellants argue that "it is patently unclear whether the language `residents of the same household,' `spouse,' and `relatives of either' contained in clause (a) [of section III(A)(2)] should refer to all employees of the township, spouses and family members of employees, designated township officials only, or to absolutely no one" and, thus, is ambiguous and must be interpreted to provide coverage to appellants.
We have thoroughly reviewed the definition of insured under Auto Owners' UM coverage and find that it is unambiguous. The definition clearly states that UM coverage is provided to the "first named insured" and if the first named insured happens to be an individual, it applies to persons who are residents of the named insured's same household, the spouse of the first named insured, and relatives of either. See Section III(A)(2)(a). The section clearly qualifies that the language concerning residents, a spouse, and relatives only has effect when the named insured is an individual. Insofar as the township is not an "individual" as that term is commonly used, we find that there is no ambiguity in the section concerning who is covered.
The language used by Auto Owners is clearly different than that used by the insurance company in King, supra. In King, the policy merely stated that "you or your legal representative" were entitled to UM coverage. Even assuming that "you" referred to the corporation, the remainder of the definition of insured was ambiguous. The remainder stated the following persons were also covered:
 "Relatives living in your household also have this protection. Anyone else is protected while occupying:
"* * *
 "4. any other motor vehicle while it is being operated by you * * *."
Regarding this policy language, King held:
 "Because `you' and `your' refer to [the corporation] as a legal entity, the ordinary meaning of the phrase `[r]elatives living in your household' used in the policy is `manifestly absurd.' However, in the context of the policy as a whole, the phrase `[r]elatives living in your household' may be interpreted as referring to all employees of [the corporation], as referring to designated drivers only, or as a nullity. Therefore, the phrase is ambiguous and must be construed in favor of the insured. * * *" King, supra at 212.
Unlike the policy in King, in this case, Auto Owners conditioned its reference to residents, a spouse, and relatives, so that those persons were only covered if the first named insured was an individual. In King
there was no such qualifying language; hence, the policy was ambiguous.
In Scott-Pontzer, the policy contained conditional language similar to that in this case; however, the Ohio Supreme Court did not find that the conditional language in the corporation's policy eliminated any ambiguity. The UM coverage in Scott-Pontzer stated as follows:
"B. Who Is An Insured
"1. You.
"2. If you are an individual, any family member.
 "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
 "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured." Scott-Pontzer, supra at 663.
The Ohio Supreme Court noted that the appellees argued as follows:
 "Appellees contend that the above-quoted policy language indicates the intent of the parties to the insurance contract to provide that [the corporation] is the only named insured. According to appellees, the inclusion of the phrase `if you are an individual, any family member' removes any doubt that `you' refers to [the corporation] and, thus, that [the corporation] is the sole named insured. In other words, appellees contend that by the insertion of this conditional language a distinction is made between `you' and an `individual,' thereby clearly evincing the intent of the parties that the corporate entity * * * be the sole named insured."
Scott-Pontzer, supra at 663-64.
The court held that while appellees' position was one interpretation of the policy, it was not the only interpretation. Id. at 664. The court cited to the syllabus in King and then stated that the policy was ambiguous as it could be interpreted to include company employees. The court reasoned as follows:
 "Assuming arguendo that `you' does refer solely to [the corporation], this does not foreclose the inclusion of Pontzer as an insured under the policy. We note again, as we have often in the past, that uninsured motorist coverage, mandated by law pursuant to R.C. 3937.18, was designed by the General Assembly to protect persons, not vehicles. Martin v. Midwestern Group Ins. Co. (1994), 70 Ohio St.3d 478, * * *, paragraph one of the syllabus. Since R.C. 3937.18
mandates underinsured as well as uninsured motorist coverage, obviously the same rationale applies to underinsured motorist coverage. It would be contrary to previous dictates of this court for us now to interpret the policy language at issue here as providing underinsured motorist insurance protection solely to a corporation without any regard to persons. See Ady v. W. Am. Ins. Co. (1982), 69 Ohio St.2d 593, * * *. Rather, it would be reasonable to conclude that `you,' while referring to [the corporation], also includes [the corporation's] employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons — including to the corporation's employees."
We disagree with this analysis. First, as mentioned above, we find that the conditional language, which applies only to named insureds who are individuals, eliminates any ambiguity, such as the kind found in King. Second, contrary to the Ohio Supreme Court's finding, the policy inScott-Pontzer does not "limit protection solely to the corporate entity." Rather, coverage is clearly provided under section B(3) to anyone
occupying a covered auto. This would obviously include "real live persons" and not merely a corporate entity.
It is obvious to this court that the intention of the contracting parties in both the case at hand and Scott-Pontzer was to limit coverage to persons injured by an uninsured or underinsured driver while actuallyoccupying a vehicle which was covered under the policy. The rationale inScott-Pontzer creates seemingly absurd results because not only would an employee or their family members benefit from UM coverage through the corporation while occupying any vehicle, regardless of whether they were acting on behalf of the corporation at the time of the accident, but they would also be covered if they were mere pedestrians who got struck by an uninsured motorist. In our opinion, Scott-Pontzer created UM coverage where neither the contracting parties nor the legislature intended coverage to extend.
It is unclear to this court, under the holding in Scott-Pontzer, how an entity could ever contract with an insurance company to have UM coverage for only a limited group within its entity. It is clear to this court that the township in this case intended to extend UM coverage to a limited group of persons within its framework, e.g., "any person while in, upon, entering or alighting from an automobile to which [liability coverage] of this policy applies." However, the corporation inScott-Pontzer also attempted to limit coverage to persons "occupying" a covered auto, but the Ohio Supreme Court did not consider this language to have any effect. Rather, the Ohio Supreme Court ignored the fact that UM coverage was provided to "real live persons" and held that, as written, the policy provided protection "solely to a corporation without any regard to persons" and, therefore, determined it to be ambiguous.
Although it is our opinion that the UM coverage in this case would exclude coverage for appellants, because Bianchi was not a named insured and was not "in, upon, entering or alighting from" a covered vehicle at the time of the accident, we are unable to distinguish the language in Auto Owners' policy from the language in the Scott-Pontzer policy. Accordingly, we reluctantly find that, based on the decision inScott-Pontzer, appellants are entitled to UM coverage under the township's policy with Auto Owners.
We therefore find, with respect to the township's UM coverage through Auto Owners' commercial automobile liability policy, that summary judgment was incorrectly granted Auto Owners and that appellants are entitled to judgment as a matter of law regarding this issue. Appellants' first assignment of error is therefore found well-taken.
Assignment of Error No. 2
Appellants argue in their second assignment of error that the trial court erred when it granted judgment to Auto Owners on their motion for summary judgment with respect to the umbrella policy. Specifically, appellants argue that there was no valid waiver of UM coverage because the township clerk was without authority to waive UM coverage and his actions were never ratified by the township; the rejection was not made voluntarily, knowingly, and intelligently and, thus, was ineffective; and the waiver was invalid insofar as it was made after the commencement of the policy period.
Relying on Kinney v. The Personal Serv. Ins. Co. (May 12, 1993), Perry App. No. CA-434, unreported, and Benner v. North River Ins. Co. (Oct. 30, 1991), Hamilton App. Nos. C-900131 and C-900143, unreported, appellants argue that, pursuant to R.C. 731.14, a waiver of UM coverage signed only by a village clerk and not ratified by the municipal corporation is invalid. R.C. 731.41 states that "[a]ll contracts made by the legislative authority of a village shall be executed in the name of the village and signed on its behalf by the mayor and clerk." In the case at hand, appellants argue that the township clerk had no actual or inherent authority to act on behalf of the township regarding insurance coverage and that only the township trustees were vested with such authority.
Initially, we find that Kinney, Benner, and R.C. 731.41 relate specifically to villages, not townships, and therefore are inapplicable to the present case. We also find that, unlike the requirement in R.C. 731.41
that both the mayor and the clerk sign all village contracts, there is no such requirement in R.C. Title 5, relating to townships. Furthermore, contrary to appellants' argument, the township established through the affidavit testimony of David Frederick, the township's insurance agent, that the township trustees were orally offered UM coverage on the umbrella policy in 1990, 1991 and 1992, that they rejected such coverage, and that the township clerk who subsequently signed the waiver of UM coverage in 1992 had apparent authority to do so, based upon the long-standing business dealings between the Frederick Agency, Inc. and the township.
Appellants additionally argue that the township's rejection was not voluntarily, knowingly, and intelligently made insofar as the offer did not comply with Ohio Adm. Code 3901-1-39(D). We find that Ohio Adm. Code3901-1-39(D) concerned the offering of underinsured motorist coverage, rather than uninsured motorist coverage. As such, appellants' reliance on Ohio Adm. Code 3901-1-39(D) and Blohm v. Cincinnati Ins. Co. (1988),39 Ohio St.3d 63, are misplaced. Also, it is apparent from the face of the "NOTICE OF OPTION TO REJECT OR MODIFY," signed by the township clerk on May 22, 1992, that Auto Owners offered UM coverage under the umbrella policy at limits equal to the umbrella policy's limits, and that the township rejected such coverage.
Appellants further argue that the waiver was invalid as it was made after the commencement of the policy period. We find that the township's rejection of UM coverage was valid for the policy year in question. We note that the notice of rejection clearly states:
 "I understand and agree that the selection of one of the options above applies to my Umbrella policy and future renewals or replacements of such policy. If I decide to select another option, I must let the Company or my agent know in writing." (Emphasis added.)
As such, based on our decision in Hammer v. Lumberman's Mut. Cas. Co. (Aug. 20, 1999), Lucas App. No. L-98-1283, unreported, we find that the valid rejection, signed on May 22, 1992, was effective as to each subsequent renewal policy. Hence, even if the rejection in 1992 would have been invalid for that policy year, pursuant to Gyori v. JohnstonCoca Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565, the rejection was valid for all subsequent renewals. See Hammer, supra. We further note that appellants' reliance on Wolfe v. Wolfe (2000), 88 Ohio St.3d 246, is misplaced. Wolfe concerned R.C. 3937.31 and had nothing to do with the issue at hand.
Based upon the foregoing, we find that a valid rejection of UM coverage under the umbrella policy was in effect at the time of Bianchi's accident. As such, the trial court properly awarded the township summary judgment with respect to its umbrella policy. Accordingly, appellants' second assignment of error is found not well-taken.
Conclusion
On consideration whereof, the court finds substantial justice has not been done the party complaining and the judgment of the Ottawa County Court of Common Pleas is reversed, in part, and affirmed, in part. This matter is remanded to the trial court for further proceedings to determine what amount, if any, appellants are entitled to recover under the UM portion of Auto Owners' commercial automobile liability policy. Costs of this appeal to be paid by appellee.
 ____________________________ Peter M. Handwork, JUDGE
Richard W. Knepper, J. CONCUR.
Melvin L. Resnick, J. Concurs in judgment only as to assignment of error #1 and concurs completely as to assignment of error #2.
[1] The term "occupying" was defined in the Landis policy as "in or upon or entering into or alighting from an `insured highway vehicle.'"