[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] * 4-29-2003 — MOTION TO CERTIFY GRANTED: "WHETHER THE SCOTT-PONTZER RATIONALE IS LIMITED TO COMMERCIAL POLICIES LISTING A CORPORATION AS THE SOLE NAMED INSURED OR WHETHER THE SCOTT-PONTZER RATIONALE APPLIES WITH EQUAL FORCE TO COMMERCIAL POLICIES WHICH LIST AS NAMED INSURED BOTH A CORPORATION AND SPECIFIC INDIVIDUALS"
 OPINION
{¶ 1} Defendant /Third-Party Plaintiff-Appellant John James appeals from the October 10, 2001, May 14, 2002, and May 21, 2002, Judgment Entries of the Holmes County Court of Common Pleas entering summary judgment in favor of Third-Party Defendant — Appellee Continental Casualty Company.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On October 26, 1999, Defendant/Third-Party Plaintiff Appellant John James was injured when the motorcycle he was driving on personal business was struck by another vehicle driven by Defendant Allen Schlabach. Defendant Schlabach admitted negligence. As a result of the above accident, appellant John James sustained substantial injuries.
 {¶ 3} This lawsuit originated as a case filed by Akron General Medical Center to recover medical expenses. James filed third party claims against Schlabach, Continental Casualty Company and The Gerstenslager Company Employee Group Benefit plan. At the time of the collision, James was an employee of the Gerstenslager Company, a wholly owned subsidiary of Worthington Industries, Inc.
 {¶ 4} James specifically sought uninsured/underinsured motorist coverage from appellee Continental Casualty Company for the accident. Appellee Continental Casualty Company had issued a comprehensive general liability (CGL) policy and a business auto policy to Worthington Industries, Inc. which was in effect at the time of the accident.
 {¶ 5} Subsequently, James and Continental moved for summary judgment. Continental argued that James was not an insured under the comprehensive general liability policy issued to Worthington and that such policy did not include uninsured/underinsured coverage because it was not a motor vehicle liability policy.
 {¶ 6} As memorialized in its Judgment Entry filed on October 10, 2001, the trial court granted Continental's motion for summary judgment as to the Business Auto policy. The trial court further found that James was not an insured under the policy as he was not working within the scope of his employment at the time of the occurrence of the accident which gave rise to the injuries in question.
 {¶ 7} On March 15, 2002, the trial court entered summary judgment in favor of James on the CGL policy.
 {¶ 8} On March 28, 2002, Continental filed a motion to reconsider.
 {¶ 9} On May 14, 2002, the trial court granted Continental's motion to reconsider.
 {¶ 10} On May 21, 2002, the trial court filed a judgment entry granting Continental's motion for summary judgment stating that the Continental policy could not serve as proof of financial responsibility and did not specifically identify vehicles.
 {¶ 11} Appellant John James now prosecutes this appeal, raising the following assignments of error:
 ASSIGNMENTS OF ERROR I. {¶ 12} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/THIRD PARTY PLAINTIFF-APPELLANT, JOHN JAMES, BY ENTERING SUMMARY JUDGMENT IN FAVOR OF THE THIRD-PARTY DEFENDANT-APPELLEE, CONTINENTAL CASUALTY COMPANY, UNDER THE BUSINESS AUTO POLICY."
 II. {¶ 13} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/THIRD PARTY PLAINTIFF-APPELLANT, JOHN JAMES, BY ENTERING SUMMARY JUDGMENT IN FAVOR OF THE THIRD-PARTY DEFENDANT-APPELLEE, CONTINENTAL CASUALTY COMPANY, UNDER THE CGL POLICY."
 STANDARD OF REVIEW {¶ 14} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. Civ.R. 56(C) states in pertinent part:
 "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 15} It is based upon this standard we review appellant's assignments of error.
 I. {¶ 16} Appellant, in his first assignment of error, challenges the trial court's holding that he was not an insured under the business auto policy issued by appellee Continental Casualty Company to Worthington because he was not working within the scope of his employment at the time of the accident. We agree.
 {¶ 17} The Continental policy at issue herein, defines "Who is an Insured" as follows:
"* * *
"a. You for any covered `auto'.
 "b. Anyone else while using with your permission a covered `auto' you own, hire or borrow except:
 "(1) The owner or anyone else from whom you hire or borrow a covered `auto'. This exception does not apply if the covered `auto' is a `trailer' connected to a covered `auto' you own.
 "(2) Your employee if the covered `auto' is owned by that employee or a member of his or her household.
 "(3) Someone using a covered `auto' while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
 "(4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered `auto'."
 {¶ 18} "You" is defined as "the Named Insured shown in the Declarations." The named insured shown on the declaration page is Worthington Industries, Inc.
 {¶ 19} Pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co.
(1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, the first issue for our determination is whether appellant, as an employee of a Worthington subsidiary, was an "insured" for purposes of underinsured motorist coverage under the policy issued by Continental. Pursuant toScott-Pontzer and its progeny, we find the "you" portion of the definition of an "insured" includes employees of Worthington Industries, its subsidiaries, and its related corporate entities. Therefore, an employee would be entitled to UIM benefits under the Continental policy. We have previously held that the inclusion of additional named insured does not remove the ambiguity as the policy still lists the corporation as the named insured, thereby extending coverage to the corporation's employees. See Still v. Indiana Ins. Co. (Feb. 25, 200), Stark App. 2001 CA 00300.
 {¶ 20} We further find that the reduction form in this case reducing UM/UIM coverage to $25,000 did not comply with the requirements enunciated in Linko v. Ind. Ins. Co. (2000), 90 Ohio St.3d 445. The Ohio Supreme Court, in Linko, supra, addressed the issue of what language needed to be included in an uninsured/underinsured motorist coverage rejection form to satisfy the offer requirement of R.C. § 3937.18(C). The Court, in Linko, held that in order to satisfy the offer requirement, the insurer must:(1) inform the insured of the availability of uninsured/underinsured motorist coverage;
"(2) set forth the premium for the coverage;
"(3) include a brief description of the coverage; and,
 "(4) expressly state the uninsured/underinsured coverage limits in its offer." Id. at 447-448.
 {¶ 21} In so holding, the Ohio Supreme Court relied on Gyori v.Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565, in which the court held that there can be no rejection pursuant to R.C. § 3937.18(C) unless there was a written offer of uninsured motorist coverage from the insurer. The Supreme Court, in discussing Gyori, stated as follows:
 "Gyori stands for the proposition that we cannot know whether an insured has made an express, knowing rejection of UIM coverage unless there is a written offer and written rejection. It only follows that a valid rejection requires a meaningful offer, i.e., an offer that is an offer in substance and not just in name." Id. at 449.
 {¶ 22} In the case sub judice, the reduction form does not meet the Linko requirements in that such form fails to state the limits of liability coverage nor does it state the premium to be charged for the UM/UIM coverage.
 {¶ 23} As the reduction form in this case is invalid, we therefore find that UM/UIM coverage arises by operation of law in an amount equal to the amount of liability insurance provided in said business auto policy, that being $2,000,000.
 {¶ 24} We must next consider the applicability of the Ohio Supreme Court's decision in Scott-Pontzer v. Liberty Mutual Fire Ins. Co.
(1999), 85 Ohio St.3d 660 to the case at bar. Appellant maintains that, in Scott-Pontzer, the Ohio Supreme Court held that an employee receives the benefit of implied UM/UIM coverage even when the employee's claim does not arise out of the course and scope of their employment.
 {¶ 25} In the Scott-Pontzer case, the decedent, Christopher T. Pontzer, while driving a vehicle owned by his wife, appellant Kathryn Scott-Pontzer, collided with a motor vehicle driven by Troy W. Taylor. Taylor's negligence caused the accident. At the time of the accident, Taylor had a policy of automobile liability insurance with limits of $100,000 per person and $300,000 per accident.
 {¶ 26} Prior to his death, Christopher Pontzer was employed at Superior Dairy, Inc. Superior Dairy, at the time of the accident, was the insured under a policy of commercial automobile liability insurance with Liberty Mutual Fire Insurance Company which contained a provision for underinsured motorist coverage. The commercial automobile liability policy contained an uninsured motorist coverage form that defined an "insured" for purposes of underinsured motorist coverage, in part, as follows:
"B. Who is an Insured.
"1. You.
"2. If you are an individual, any family member. . . ."
 {¶ 27} Superior Dairy also had an "umbrella/excess" insurance policy with Liberty Mutual Insurance Company. The umbrella/excess insurance policy did not provide for uninsured/underinsured coverage, but the Ohio Supreme Court found that said coverage arose by operation of law pursuant to R.C. 3937.18. The umbrella/excess liability policy contained a declaration page and a definition page for liability coverage only. The declaration page named Superior Dairy, Inc. as the named insured. Section II, page 6 of said policy entitled "WHO IS AN INSURED" stated the following:
"1. If you are designed [sic] in the Declaration as:
 "a. An individual, you and your spouse are insured; but only with respect to the conduct of a business of which you are the sole owner.
 "b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds; but only with respect to the conduct of your business.
 "c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insured; but only with respect to their duties as you [sic] officers or directors. Your stockholders are also insureds; but only with respect to their liability as stockholders.
"2. Each of the following is also an insured
 "a. Your employees, other than your executive officers; but only for acts within the scope of their employment by you [sic] Coverage for these insureds is subject to the following restrictions: * * *" (Emphasis omitted.)
 {¶ 28} There was no declaration page for uninsured motorist coverage because none was offered.[2]
 {¶ 29} On July 9, 1996, appellant Kathryn Scott-Pontzer filed an action as surviving spouse and executor of her husband's estate against Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company. Appellant Kathryn Scott-Pontzer alleged, in her complaint, that because her husband was an employee of Superior Dairy she was entitled to underinsured motorist benefits under Superior Dairy's automobile liability policy with Liberty Mutual Fire Insurance Company. Appellant Kathryn Scott-Pontzer also maintained she was entitled to any benefits accruing under Superior Dairy's umbrella policy with Liberty Mutual Insurance Company.
 {¶ 30} Subsequently, the trial court granted summary judgment in favor of Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company. Pursuant to an Opinion filed in Scott-Pontzer v.Liberty Mutual Fire Ins. Co. (Jan. 20, 1998), HOLMES App. No. 1997 CA 00152, unreported, this Court affirmed the judgment of the trial court, for different reasons, finding that the policies in question were `ambiguous as to the "insureds" under the underinsured motorist coverages. Citing King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208,212, 519 N.E.2d 1380, we stated that a corporation as an insured can mean not only directors, officers and shareholders, but also employees. We thus concluded that the appellant, as an employee, was covered under the underinsured motorist coverages. We further held that underinsured motorist coverage under a corporate policy is available only to those employees injured while acting within the scope of their employment. Thus, we concluded that since appellant's husband was not within the scope of his employment when the accident occurred, underinsured motorist coverage was not available to appellant Kathryn Scott-Pontzer.
 {¶ 31} On appeal, the Ohio Supreme Court made the following findings in concluding that Christopher Pontzer was an insured under the policies of insurance issued to Superior Dairy by Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company. First, the Court noted that '[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.'Scott-Pontzer, 85 Ohio St.3d at 664, citing King v. Nationwide Ins. Co.
(1988), 35 Ohio St.3d 208, syllabus. The Court further stated "that uninsured motorist coverage, mandated by law pursuant to R.C. 3937.18, was designed by the General Assembly to protect persons, not vehicles."Id., citing Martin v. Midwestern Group, Ins. Co. (1994), 70 Ohio St.3d 478, paragraph one of the syllabus. Based on the above principles, the Ohio Supreme Court concluded that the "you" contained in the automobile liability policy, while referring to Superior Dairy, also included Superior Dairy's employees since a corporation can only act by and through live persons. The Court, in so concluding, noted that it "would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." Scott-Pontzer at 664.
 {¶ 32} After concluding that Christopher Pontzer was an insured under both the automobile liability insurance policy and the umbrella/excess policy, the Ohio Supreme Court addressed the issue of scope of employment. The Court again cited to King and stated that "[w]here exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof." Id. at 665-666, citing King at 214. Since the Liberty Mutual Fire Insurance Company commercial automobile liability policy contained no language requiring that employees must be acting within the scope of their employment in order to receive underinsured motorist benefits, the court held that appellant Kathryn Scott-Pontzer was entitled to underinsured motorist benefits under such policy. Scott-Pontzer at 666.
 {¶ 33} The Ohio Supreme Court in Scott-Pontzer reached the same conclusion for the umbrella/excess policy issued by Liberty Mutual Insurance Company, which did restrict coverage to employees acting within the scope of their employment. The Ohio Supreme Court held that because Liberty Mutual Insurance Company failed to offer underinsured motorist coverage through the umbrella policy issued to Superior Dairy, the same arose by operation of law. The Court also found that the language in the umbrella policy restricting insurance coverage to employees acting within the scope of their employment was intended to apply solelyto excess liability coverage and not to underinsured motorist coverage. Based on the foregoing, the Ohio Supreme Court, in Scott-Pontzer, held that Kathryn Scott-Pontzer was entitled to underinsured motorist benefits under the umbrella policy.
 {¶ 34} We concur with appellant that the trial court in the casesub judice erred in holding that appellant James did not qualify as an insured under the business auto liability policy issued by appellee Continental to Worthington. Both the umbrella/excess policy inScott-Pontzer and the business auto liability policy in the case subjudice include within the definition of an insured employees who are acting within the scope of their employment. Thus, both policies limited coverage to employees acting within the scope of their employment. John James was not acting in the scope of his employment. However, in holding that the appellant in Scott-Pontzer was entitled to underinsured motorist coverage under the umbrella/excess policy even though Christopher Pontzer, appellant's husband, was not acting within the scope of his employment at the time of the accident, the Ohio Supreme Court stated as follows:
 "On the other hand, Liberty Mutual's umbrella/excess insurance policy did restrict coverage to employees acting within the scope of their employment. However, we have already found that Liberty Mutual had failed to offer underinsured motorist coverage through the umbrella policy issued to Superior Dairy. Thus, any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage. See, e.g., Demetry v. Kim (1991), 72 Ohio App.3d 692, 698, 595 N.E.2d 997, 1001. Therefore, there is no requirement in the umbrella policy that Pontzer had to be acting during the scope of his employment to qualify for underinsured motorist coverage. Therefore, appellant is entitled to underinsured motorist benefits under the Liberty Mutual umbrella policy as well." (Emphasis added). Scott-Pontzer, supra, at 666.
 {¶ 35} In accordance with Scott-Pontzer, we find that Worthington employees are insureds under the UM/UIM coverage which arose by operation of law to the Continental policy. We further find that the language in the Continental policy limiting coverage to Worthington employees who are acting within the course and scope of their employment is not applicable to the UM/UIM coverage in this matter which arose by operation of law. See also Brodbeck v. Continental Casualty Co. (Feb. 8, 2002), Lucas App. No. L-01-1269, unreported in which the court held that "[p]ursuant to theScott-Pontzer doctrine, . . . scope of employment exclusion applies solely to excess liability coverage and not to the UIM coverage that has arisen by operation of law." Appellant John James, therefore, is an insured person under the UM/UIM coverage which arose by operation of law to the Continental business auto liability policy, even though he was not working within the scope of his employment at the time of the occurrence of the accident which gave rise to the injuries in question.
 {¶ 36} Appellant's first assignment of error is, therefore, sustained.
 II. {¶ 37} In his second assignment of error, Appellant argues that the trial court erred in finding that the CGL policy was not a motor vehicle policy subject to R.C. § 3937.18. We disagree.
 {¶ 38} "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmer's Ins.Group of Companies (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, syllabus.
 {¶ 39} As the effective date of the CGL policy was September 1, 1999, it is undisputed that R.C. § 3937.18 as, amended by H.B. 261, which took effect September 3, 1997, applies in the instant case as the claim in this matter arose on October 16, 1999.
 {¶ 40} The relevant version of R.C. § 3937.18 provides, in pertinent part, as follows:
 "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds:
"(1) Uninsured motorist coverage . . .
"(2) Underinsured motorist coverage
 "(L) As used in this section, "automobile liability or motor vehicle liability policy of insurance" means either of the following:
 "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
(2) Any umbrella liability policy of insurance."[3]
 {¶ 41} Appellant contends that the general liability policy issued to Worthington by Appellee is a "policy of insurance that serves as proof of financial responsibility." See R.C. § 3937.18(L)(1).
 {¶ 42} The trial court, relying on our decision in Pickett v. OhioFarmers Ins. Co. (Jan 14, 2002), Stark App. No. 2001CA00227,2002-Ohio-259, found that the CGL policy was not subject to the UM/UIM statute because it only provided incidental coverage to a narrow class if equipment, did not serve as proof of financial responsibility and did not list specifically identified vehicles.
 {¶ 43} Based on our reasoning in Pickett, supra, we agree with the trial court.
 {¶ 44} Appellant's second assignment of error is overruled.
 {¶ 45} Accordingly, the judgment of the Holmes County Court of Common Pleas is affirmed in part and reversed in part and this matter is remanded for further proceedings.
By Boggins, J., Farmer, P.J., and Wise, J. concur.
[2] This policy language was quoted from Scott-Pontzer v. LibertyMutual Fire Ins. Co. (Jan. 20, 1998), HOLMES App. No. 1997CA00152, unreported.
[3] Effective November 2, 1999, R.C. 3937.18(L)(2) was amended to include the following language after insurance: "written as excess over one or more policies described in division (L)(1) of this section."