[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] This appeal involves only the defendant The Cincinnati Insurance Company.
 DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Ross County Common Pleas Court summary judgment in favor of The Cincinnati Insurance Company (Cincinnati), defendant below and appellee herein.
 {¶ 2} Terence G. And Mary Beth Habermehl, plaintiffs below and appellants herein, raise the following assignment of error for review and determination:
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT, THE CINCINNATI INSURANCE COMPANY."
 {¶ 3} On October 20, 2000, Appellant Terence Habermehl, while driving his personal automobile, suffered injuries in an automobile accident that a negligent underinsured motorist caused. He subsequently sought underinsured motorist (UIM) coverage under his employer's, Fifth Third Bank's, automobile liability insurance policy. Cincinnati issued that particular policy. Their policy defined an insured as, inter alia, "[e]mployees of the Named Insured, but only for injuries arising out of and incurred while in the course and scope of employment for the Named Insured shown in the Declarations of this Coverage Form." Appellant asserted that he qualified as an insured because at the time of the accident, he was Fifth Third Bank's employee and sustained his injuries in the course and scope of his employment. Appellant asserted that at the time of his accident he was en route from his home to the Chillicothe bank branch office for a staff meeting. He stated that in his position as a "trust new business officer," he did not have a fixed office location, but instead traveled each day from his home to various locations, including bank branches, homes, restaurants, and golf courses, to meet with customers and other bank employees. Appellant provided the bank with his schedule so that he could be contacted if necessary. Fifth Third reimbursed appellant for the mileage he incurred while traveling from his home to his appointments.
 {¶ 4} After Cincinnati denied appellants UIM coverage, appellant filed a complaint against Cincinnati, Mary J. Seymour (the negligent driver), and USAA Casualty Insurance Company (the Habermehl's personal insurer). Appellant subsequently dismissed claims against USAA and Seymour.
 {¶ 5} Both appellant and Cincinnati filed summary judgment motions. Cincinnati argued that appellant did not meet the definition of an insured because he did not sustain his injuries in the course and scope of employment and because his injuries did not arise out of his employment.
 {¶ 6} On May 12, 2005, the trial court granted Cincinnati summary judgment and determined that although appellant sustained his injuries in the course of employment, his injuries did not arise out of his employment:
"The accident occurred while Mr. Habermehl was driving from his home in Wilmington, Ohio, to his first appointment of the day in Chillicothe, Ohio, and such commuting is an activity that is consistent with employment and logically related to the employer's business.
The Court, however, cannot find that the accident arose out of Mr. Habermehl's employment. The accident scene, while in Chillicothe, did not take place at plaintiff's place of employment. Plaintiff's employer had no degree over control over the scene of the accident and there was no benefit to plaintiff's employer from plaintiff's presence at the scene of the accident.
The Court further finds that no special circumstances exist as were found in Ruckman. The travel that employees undertook inRuckman is quantitatively and substantively different than that of plaintiff. Plaintiff's travels were not overnight and were confined, apparently, to Southwestern Ohio and South Central Ohio.
The Court therefore must find that the accident occurred in the course of, but did no arise out of, the defendant's employment and therefore no coverage exists under either business auto policy or the umbrella policy."
 {¶ 7} The court thus determined that appellant was not entitled to UIM coverage under Cincinnati's policy. Appellants timely appealed the court's judgment.
 {¶ 8} In their sole assignment of error, appellants assert that the trial court erred by granting Cincinnati summary judgment. Appellant argues that he is entitled to coverage under Cincinnati's policy because the accident occurred while he was in the course and scope of employment. Appellant contends that: "He did not have a fixed office location where he reported to work each morning. Instead, he worked from his home and traveled every day to different places to keep appointments with bank officials and customers. Mr. Habermehl was paid mileage whenever he left his home office to travel to an appointment." Appellant asserts that his travel was a necessary and required part of his employment and promoted and furthered his employer's business.
 {¶ 9} Initially, we note that when reviewing a trial court's summary judgment decision, an appellate court conducts a de novo review. See, e.g., Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v. Conley (1991),75 Ohio App.3d 409, 411-12, 599 N.E.2d 786. Thus, in determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
 {¶ 10} Civ.R. 56(C) provides, in relevant part, as follows:
* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
 {¶ 11} Thus, a trial court may not grant a summary judgment motion unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997),77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164.
 {¶ 12} An insurance policy is a contract. Westfield Ins. Co.v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 9. Our role in interpreting a contract is to give effect to the contracting parties' intent. Id. at ¶¶ 11. In doing so, we must examine the insurance contract as a whole and presume that the language used in the policy reflects the parties' intent. Id., citing Kelly v. Med. Life Ins. Co. (1987),31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus. "We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." Id., citing Alexander v. Buckeye Pipe Line Co.
(1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus. When the words used are clear, we "may look no further than the writing itself to find the intent of the parties." Id. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. Id.
 {¶ 13} When a contract is ambiguous we may consider extrinsic evidence to ascertain the parties' intent. Id. at ¶ 12, citingShifrin v. Forest City Enterprises, Inc. (1992),64 Ohio St.3d 635, 597 N.E.2d 499. We may not, however, "alter a lawful contract by imputing an intent contrary to that" the parties expressed. Id. Generally, the fact finder must resolve ambiguity in a written contract. Id. at ¶ 13. When the contract is "standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party." Id. Because in the insurance context the insurer customarily drafts the contract, courts ordinarily construe ambiguity in an insurance contract against the insurer and in favor of the insured. Id., citing King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208,519 N.E.2d 1380, syllabus.
 {¶ 14} In the case at bar, we first must construe the "employees as insureds" definition, i.e., employees are insureds but only for injuries arising out of and incurred while in the course and scope of employment. In doing so, the parties suggest that we look to workers' compensation law, which defines the phrases "arising out of" and "in the course and scope of employment." We additionally note that in Westfield Ins. Co. v.Galatis, 100 Ohio St.3d 216, 797 N.E.2d 1256, 2003-Ohio-5849 at syllabus 2, the Ohio Supreme Court wrote:
"Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment. (King v. Nationwide Ins. Co.
[1988], 35 Ohio St.3d 208, 519 N.E.2d 1380, applied;Scott-Pontzer v. Liberty Mut. Fire Ins. Co. [1999],85 Ohio St.3d 660, 710 N.E.2d 1116, limited.)"
 {¶ 15} "In the course of" refers to "the time, place, and circumstances of the injury." Ruckman v. Cubby Drilling, Inc.
(1998), 81 Ohio St.3d 117, 120, 689 N.E.2d 917 (citing Fisher,49 Ohio St.3d at 277-78, 551 N.E.2d 1271). Generally, an employee with a fixed place of employment (a "fixed situs" employee), who is injured while traveling to or from his place of employment, cannot establish that he received his injuries in the course and scope of employment. See MTD Products, Inc. v. Robatin (1991),61 Ohio St.3d 66, 572 N.E.2d 661, at syllabus. The rationale for this "coming-and-going" rule is to compensate the employee for hazards the employee encounters "`in the discharge of the duties of his employment,'" but not for "`risks and hazards, such as those of travel to and from his place of actual employment over streets and highways, which are similarly encountered by the public generally.'" Ruckman, 81 Ohio St.3d at 119.
 {¶ 16} "In determining whether an employee is a fixed-situs employee * * * the focus is on whether the employee commences his substantial employment duties only after arriving at a specific and identifiable work place designated by his employer." Id. Thus, even if an employee's work site changes monthly, weekly, or even daily, each particular job site may constitute a fixed place of employment. Id. at 120.
 {¶ 17} A finding that the employee is a fixed situs employee does not, however, necessarily end the inquiry. A fixed situs employee may avoid application of the coming and going rule if "he can, nevertheless, demonstrate that he received an injury in the course of and arising out of his employment." Id.
 {¶ 18} "The phrase `in the course of employment' limits compensable injuries to those sustained by an employee while performing a required duty in the employer's service." Id. "An injury is compensable if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business." Id.
 {¶ 19} Ordinarily, "an employee's commute to a fixed work site bears no meaningful relation to his employment contract and serves no purpose of the employer's business. That is not the case, however, where * * * the employee travels to the premises of one of his employer's customers to satisfy a business obligation." Id. at 121. If the employee sustains his injuries off his employer's premises, then to show that he received his injuries in the course of employment, "`the employee, acting within the scope of his employment, must, at the time of his injury, have been engaged in the promotion of his employer's business and in the furtherance of his affairs.'" Id. at 121, quoting Indus. Comm. v. Bateman (1933), 126 Ohio St. 279,185 N.E. 50.
 {¶ 20} "[P]ayment for travel is commonly considered to be a key factor in determining whether an employee was in the course of his or her employment while traveling to a job site." Id. at 121 fn.1 (citation omitted). However, it should not "serve as a leading factor in the course-of-employment inquiry." Id.
 {¶ 21} In Ruckman, the court determined that although the employees were fixed situs employees, they nevertheless showed that they received their injuries in the course of employment. The court stated:
"The nature of the rigging business requires that drilling be done on a customer's premises. That is a necessary condition of the work contract. The riggers set up on a customer's premises, drill a well and, after completion, disassemble the derrick for transport to the next job site. Consequently, while coming to and going from a customer's premises, these employees are engaged in the promotion and furtherance of their employer's business as a condition of their employment."
Id. at 121.
 {¶ 22} In the case at bar, we agree with the trial court's conclusion that appellant sustained his injuries in the course and scope of employment. Appellant's job required him to travel to various locations to meet with bank customers and employees. His travel furthered his employer's business because it allowed him to fulfill his employment obligations. Additionally, appellant's employer paid him for the mileage he incurred while traveling to the various locations. Thus, even if we were to conclude that appellant was a fixed situs employee, he nevertheless can show that he received his injuries in the course and scope of employment.
 {¶ 23} Contrary to appellants' arguments, however, a finding that appellant sustained his injuries in the course and scope of employment does not end our inquiry. Appellant must also show that his injuries arose out of employment.
 {¶ 24} Courts use a totality of the circumstances test to determine whether an injury arose out of employment. See id. at 122, citing Lord v. Daugherty (1981), 66 Ohio St.2d 441,423 N.E.2d 96. A court should review the following factors: "`(1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident.'" Id., quoting Lord, syllabus.
 {¶ 25} In Ruckman, the court determined that the above three factors did not support a conclusion that the employees' injuries arose out of their employment. The court explained:
"Each accident occurred some distance away from the assigned work site. The employer exercised no control over the public roadways upon which the accidents occurred. Finally, the riggers' presence at the scene of the accident served little benefit to the employer. Simply put, at the time of the accidents, none of the riggers had yet arrived at a place where the work was to be performed. Although the riggers' travel was necessitated by the employer's business obligations, the accident did not occur at a location where the riggers could carry on their employer's business."
Ruckman, 81 Ohio St.3d at 122.
 {¶ 26} Similarly, in the case at bar, application of theLord factors does not support a finding that appellant's injuries arose out of his employment. First, appellants have not presented evidence showing the exact distance between Habermehl's work site and the accident scene. Neither of the parties has suggested that the accident occurred on the employer's premises. Second, the accident occurred on a public road over which the employer had no control. Third, appellant's presence at the accident scene served his employer little benefit. He had yet to arrive at a location where he could perform work for his employer. Thus, appellant cannot demonstrate, through use of theLord factors, that his injury arose out of employment. SeeMoss v. Conrad, 157 Ohio App.3d 47, 2004-Ohio-2065,809 N.E.2d 36, at ¶ 23 (concluding that the plaintiff's injury did not arise out of her employment when the employer had no control over the city streets where the accident occurred, when her presence at the accident scene "served little benefit to her employer [because] * * * the accident did not `occur at a location where [she] could carry on [her] employer's business,'" and when she was not `on the clock' at the time of the accident"); see, also,Bartley v. Bagshaw Enterprises, Inc., Highland App. No. 03CA6,2004-Ohio-2182. Appellant may, however, if applicable, show that his injuries arose out of employment under the "special hazard" rule.
 {¶ 27} If an employee fails to establish that his injuries arose out of employment by using the Lord factors, he may use the "special hazard" rule to show that his injuries arose out of employment. Ruckman, 81 Ohio St.3d at 123. To successfully use the special hazard rule, an employee must show that his travel created a risk "distinctive in nature or quantitatively greater than the risk common to the public." MTD Products,61 Ohio St.3d at 68; see, also, Ruckman, 81 Ohio St.3d at 123. The special hazard rule "does `not embrace risks and hazards, such as those of travel to and from [an employee's] place of actual employment over streets and highways, which are similarly encountered by the public generally." Ruckman,81 Ohio St.3d at 123, quoting Indus. Comm. v. Baker (1933), 127 Ohio St. 345,188 N.E. 560, paragraph four of the syllabus.
 {¶ 28} In Ruckman, the court found that "multiple factors" supported its conclusion that the riggers' travel to temporary drilling sites constituted a special hazard. The court explained:
"Two such factors are the temporary nature and constantly changing location of the riggers' fixed work sites. Cubby regularly dispatched its employees over a three-state area for work assignments typically lasting somewhere between three and ten days. Unlike the typical fixed-situs employee, the Cubby riggers did not know the location of future assignments, and it was impossible for them to fix their commute in relation to these remote work sites. Cubby's customers determined the drilling sites and Cubby dispatched its employees to these locations without regard to the distance the riggers would need to travel. While Cubby paid a bonus to its employees based on how far they worked away from the company's Midvale base, under normal circumstances that bonus was minimal and did not contemplate overnight expenses. Instead, Cubby expected its workers to commute back and forth to the job site on a daily basis or arrange and pay for their own overnight accommodations.
A third factor pertinent here is the distance of the riggers' commutes to the remote work sites. As a condition of their employment, Cubby required the riggers to report to work sites separated by significant distances, both from each other and from the Midvale home base. Although the riggers worked within an area of a one-day drive, that area was not so limited as to bring the riggers' travel to the varying work sites in line with work commutes to the public. For most employees, commuting distance to a fixed work site is largely a personal choice. Any increased risk due a longer commute is due more to the employee's choice of where he or she wants to live than the employer's choice of where it wants to locate its business. Accordingly, it usually is not the employment relationship that exposes an employee to the greater risk associated with a long commute. Moreover, the risks associated with highway travel are not distinctive in nature from those faced by the public in general. Here, however, the employment relationship dictates that the riggers undertake interstate and lengthy intrastate commutes, thereby significantly increasing their exposure to traffic risks associated with highway travel."
Id. at 124-25.
 {¶ 29} In the case sub judice, we do not believe that the special hazard rule applies. Appellant did not have constantly changing and temporary work locations. Rather, he stated that he planned his work so that he was at a certain location, for example Chillicothe, on a certain day of the week. Unlike the riggers in Ruckman, appellant knew the location of his future work assignments and could fix his commute in relation to his work sites. Additionally, unlike the riggers, appellant's job did not require him to travel significant interstate or intrastate distances. See Moss, at ¶ 27 (rejecting the plaintiff's argument that the special hazard rule applied and explaining that "[w]hat made the commutes distinctive in Ruckman is that workers (1) constantly changed locations every three to ten days and (2) had lengthy interstate and intrastate commutes").
 {¶ 30} Cincinnati's contract requires an employee's injuries to both arise out of and occur in the course and scope of employment. Appellants have demonstrated that genuine issues of material fact remain regarding whether Habermehl sustained his injuries in the course and scope of employment, but failed to show that genuine issues of material fact remain regarding whether his injuries arose out of employment. Therefore, we conclude that the trial court appropriately granted summary judgment in Cincinnati's favor.
 {¶ 31} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.